Alejandro CARDENAS, Appellant

v.

BILFINGER TEPSCO, INC., Appellee

NO. 01-16-00422-CV

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued June 1, 2017

Eric D. Nielsen, William J. Robertson, 9800 Northwest Fwy, Suite 314, Houston, TX 77092, for Appellant.

John Riddle, Andrew F. Carter, STRASBURGER & PRICE, LLP, 901 Main Street, Suite 4400, Dallas, TX 75202, for Appellee.

Panel consists of Justices Keyes, Bland, and Huddle.

## OPINION

Evelyn V. Keyes, Justice

Appellant, Alejandro Cardenas, sued his former employer and appellee, Bilfinger TEPSCO, Inc. ("Bilfinger") for retaliation under the Texas Workers' Compensation Act ("TWCA"), and the trial court rendered summary judgment in favor of Bilfinger. In three issues on appeal, Cardenas argues that the trial court erred in rendering summary judgment because (1) Cardenas presented evidence establishing a prima facie claim of retaliation and demonstrating that Bilfinger's stated reason for his termination was false; (2) Bilfinger's motion for summary judgment was premature; and (3) he did not receive adequate notice of the motion for summary judgment. We conclude that Cardenas failed to raise a genuine issue of material fact on his retaliation claim and that the trial court did not abuse its discretion in ruling on the motion when it did, and, accordingly, we affirm.

## Background

Cardenas, a journeyman electrician, began working for Bilfinger as a contract worker in July 2013 on a project described as the "Pad 5 North Storage Project" ("the Project"). On September 25, 2013, he injured his back on the job while moving heavy machinery. Bilfinger, according to its policy, completed an Employee Injury Report and gave it to Cardenas for his review. Cardenas, the superintendent for the Project, Felipe Narvaez, and other Bilfinger management personnel signed the injury report on September 26, 2013. Cardenas was then placed on light duty and continued to work.

On October 11, 2013, as part of his ongoing duties to manage the Project's personnel needs, Narvaez met with other Bilfinger managers to discuss continuing "a reduction in force and the laying off of additional electricians and electrician helpers" that had begun the month before. Following this October 11 meeting, Narvaez compiled a list of workers to be laid off as part of Bilfinger's reduction in force on the Project, including Cardenas and

"several other electricians and electrician helpers."

On October 14, 2013, Cardenas retained an attorney to pursue a workers' compensation claim on his behalf. On October 16, 2013, Bilfinger's workers' compensation insurance carrier was notified of Cardenas's workers' compensation claim, and it in turn notified Bilfinger that same day that Cardenas had filed a claim. Bilfinger then filed an official "Employers First Report of Injury or Illness" ("First Report of Injury") with its insurance carrier.

Bilfinger terminated Cardenas's employment on October 17, 2013. It provided him a preprinted "Termination Statement" filled in with his name and other identifying information and signed by Narvaez and a witness, Vilma Reyes. Under "Reason for Termination," there was an "X" next to "reduction in force," although there were several other options listed as well, including "quit" and "sickness or other physical disability." Finally, the form contained the statement, "This is to certify that I have suffered NO injury while working for [Bilfinger] that has not been previously reported," and it had a blank line for the employee's signature.

On February 5, 2015, Cardenas filed suit against Bilfinger, alleging that it fired him in retaliation for his filing of a workers' compensation claim in violation of the TWCA. With his petition, Cardenas also filed and served discovery requests.

On March 3, 2016, Bilfinger notified Cardenas of the oral hearing on its motion for summary judgment, set for April 29, 2016, and stated that Bilfinger "will timely file its Motion for Summary Judgment prior to the hearing as required by the Texas Rules of Procedure."

On April 6, 2016, Bilfinger filed its traditional and no-evidence motion for summary judgment and served it on Cardenas's counsel electronically. Bilfinger argued in its motion for summary judgment that Cardenas could not establish a prima facie case of workers' compensation retaliation because he could not "show a causal link between his filing of . . . a workers' compensation claim and his termination." Bilfinger also argued that even if Cardenas could establish a prima facie case of retaliation under the TWCA, Bilfinger's own summary judgment evidence "conclusively establishes that it terminated [Cardenas] solely for a legitimate, non-retaliatory reason, that being Bilfinger's implementation of a reduction in force on the Project." Bilfinger asserted that Cardenas could not show that its stated reason for his termination was pretextual.

Attached as evidence to its motion for summary judgment were affidavits, including the affidavit superintendent Felipe Narvaez; deposition transcripts, including the depositions of Cardenas, the Project's safety supervisor, Mike Taff, and the general foreman for the electricians, Benito Juarez; and other documents.

Bilfinger's internal "Employee Injury/Illness Report," completed the day after Cardenas's injury, states that Cardenas was injured when he attempted to manually move a threading machine rather than use proper equipment. Other evidence, including Cardenas's own deposition, showed that he returned to work the day after his injury and that Bilfinger employees checked on Cardenas's well-being and took him to the doctor. Taff, Juarez, and Narvaez stated that around the same time Cardenas was injured and retained an attorney, the Project was nearing completion and Bilfinger began its customary practice of reducing the size of its workforce on the Project. Taff and Juarez testified in their deposition that this was common in the industry, and Taff stated that six or seven

of the electrical workers on the Project were terminated for "reduction in force" in the weeks before and after Cardenas's termination. Taff, Juarez, and Narvaez testified that Cardenas was likewise terminated as part of a reduction in force, and they all stated that they were not aware that Cardenas had hired an attorney to pursue a workers' compensation claim at the time Cardenas was terminated. Cardenas stated in his deposition that he never told anyone at Bilfinger about the hiring of the attorney or filing of the claim at the time those things occurred. Cardenas acknowledged that no one at Bilfinger discouraged him from filing the claim or made any negative comments to him about it.

Narvaez averred that, as the Project superintendent, he was solely responsible for making personnel decisions, including the decision to terminate Cardenas, and that he began attending meetings in September 2013 regarding manpower needs and estimated dates for completion of the Project. The record demonstrated that Bilfinger began to reduce the number of workers, including electricians, at the end of September and in early October. Narvaez averred that on October 11, 2013, he attended another meeting and then compiled a list of more electricians to be laid off as part of Bilfinger's reduction in force, a list that included Cardenas and several other electricians and electrician helpers. Narvaez had no knowledge at the time Bilfinger terminated Cardenas's employment on October 17, 2013, that Cardenas had retained an attorney or filed a workers' compensation claim.

Cardenas testified in his deposition about his work history, in which he had previously been terminated by a different employer as part of a reduction in the workforce on a project, and he agreed that such terminations were standard in the industry. He testified that he had worked for Bilfinger full time as a journeyman electrician making $30 per hour, often working more than fifty hours a week. He also testified that the only times he missed work was to attend doctor's appointments with the mother of his child. Following his injury, Cardenas testified that he did not ask anyone at Bilfinger what he should do and instead chose to hire an attorney, explaining, "That was when they were getting ready to lay me off. I contacted [the lawyer] to see what should be done about my back injury." Cardenas also testified about a conversation between himself and Juarez in which Juarez told him that he was going to get his hours "cut down to 40 hours." Cardenas did not know if this was related to his injury or to the reduction in workforce.

Cardenas acknowledged that he never told Narvaez that he was pursuing a workers' compensation claim. Cardenas stated that Narvaez told him he was being fired because "There was [a] reduction, that the job was slowing down," but he believed the "real reason" he was laid off was his injury. When asked whether he had facts or objective evidence to support his belief, Cardenas answered, "No." Cardenas acknowledged that no one at Bilfinger made any negative comments regarding his injury or his filing of a workers' compensation claim. He received workers' compensation benefits starting in the fall of 2013 and stopped receiving them in October 2015.

Cardenas objected to Bilfinger's motion for summary judgment, asserting that the motion, filed six weeks before the end of the discovery period, was untimely and that he "did not receive the motions for summary judgment at least 24 days prior to the date of the hearing on the motion." He filed a verified motion for continuance, arguing that the May 20, 2015 discovery deadline established in the agreed docket control order had not expired and that "all

discovery has not been completed." Cardenas identified six individuals that he wished to depose "regarding [Bilfinger's] true motives in terminating [him]." He did not provide any other information about these individuals except to say that "[m]ost if not all of these witnesses allegedly no longer work for [Bilfinger] and must be located and served with subpoenas." Cardenas stated in his verified motion that the deposition of Narvaez was scheduled for May 9, 2016, but he provided no other information regarding his discovery efforts.

Subject to his objections and motion for continuance, Cardenas responded to Bilfinger's motion for summary judgment by arguing that he had established a prima facie retaliation case and had presented some evidence that Bilfinger's stated reason for his termination was false. He averred that his employers at Bilfinger, including Taff and Juarez, were aware of his on-the-job injury the day it happened. Taff took him to the doctor on three occasions, and Bilfinger put him on light duty work. Cardenas also argued that Bilfinger's filing of its First Report of Injury with its insurance carrier demonstrated its knowledge of his claim, stating, "How would Defendant know to file its Employers First Report of Injury if it had no knowledge that Plaintiff was filing a worker's compensation claim?"

In his affidavit attached to his response, Cardenas also averred that, on September 30, 2013, he went to see a chiropractor of his own choice. On October 14, 2013, he hired a lawyer to pursue a workers' compensation claim with Bilfinger's workers' compensation insurance carrier. "Two or three days before" he was terminated, an insurance adjuster for Bilfinger's insurance carrier called Cardenas, but the adjuster hung up when Cardenas informed him that he had retained an attorney.

Cardenas argued that this evidence, combined with Bilfinger's submission of the First Report of Injury form to its insurance carrier on October 16, 2013, and its subsequent termination of him the following day, on October 17, 2013, constituted some circumstantial evidence of a causal link between his filing of a workers' compensation claim and his termination.

Cardenas also argued that other employees were terminated shortly after filing workers' compensation claims, claiming that Bilfinger had engaged in a pattern of terminating employees who had recently been injured under the "reduction in force" guise. He identified four employees—none of whom were electricians or workers employed on the same Project—who were terminated between May 2007 and February 2011 within a couple of weeks of sustaining on-the-job injuries. For each of the four identified former employees, Cardenas included the First Report of Injury form that had been filed with Bilfinger's insurance carrier and the termination notices showing that they were terminated for "reduction in force." Cardenas also asserted that Bilfinger discriminated against him by reducing his hours after he was placed on light duty work.

Following the filing of the motion for summary judgment and Cardenas's motion for continuance and response, the trial court held a hearing on April 29, 2016. The trial court granted Bilfinger's motion for summary judgment "in all respects and on all grounds set out in the Motion," and it dismissed with prejudice all of Cardenas's claims. This appeal followed.

### Summary Judgment

In his first issue on appeal, Cardenas argues that the trial court erred in granting summary judgment in favor of Bilfinger. He asserts that the trial court applied

the wrong standard and that he presented adequate evidence establishing a prima facie case of retaliation under the TWCA.

## A. Standard of Review

We review a trial court's ruling on a summary-judgment motion de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request under the traditional summary judgment standard. *Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. 2004).

To prevail on a traditional summary-judgment motion, the movant bears the burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *Cleveland v. Taylor*, 397 S.W.3d 683, 697 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (stating that summary judgment evidence raises fact issues if reasonable and fair-minded jurors could differ in their conclusions in light of all evidence presented).

A party may move for no-evidence summary judgment after adequate time for discovery has passed. TEX. R. CIV. P. 166a(i). The movant must specify one or more essential elements of a claim on which there is no evidence, and, once it has done so, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. *Id.*; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The trial court must grant a no-evidence motion for summary judgment if, after an adequate time for discovery has passed, the moving party asserts that there is no evidence of one or more specified elements of a claim or a defense on which the adverse party would have the burden of proof at trial and the respondent produces no summary-judgment evidence raising a genuine issue of material fact on those elements. TEX. R. CIV. P. 166a(i); *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006).

To determine if the nonmovant raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848; *Cleveland*, 397 S.W.3d at 697. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Cleveland*, 397 S.W.3d at 697. The evidence produced must amount to more than a scintilla in order to raise a fact issue. *Madison v. Williamson*, 241 S.W.3d 145, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Evidence amounts to more than a scintilla if it enables reasonable and fair-minded people to differ in the conclusions to be drawn from it. *See id.* at 151–52 (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)). Evidence does not amount to more than a scintilla if it gives rise only to surmise or suspicion about the fact to be proven. *See id.* at 152.

We must affirm a summary judgment order if any of the grounds present-

ed to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Cleveland*, 397 S.W.3d at 697.

## B. Workers' Compensation Retaliation

Cardenas argues in part that the trial court "failed to apply the correct legal standard in determining whether [he] established a causal link by circumstantial or direct evidence" between his termination and his filing of a workers' compensation claim. Accordingly, we begin by setting out the proper standard governing claims for retaliation under the TWCA.

Under the TWCA, an employer "may not discharge or in any other manner discriminate against an employee because the employee has ... filed a workers' compensation claim in good faith." Tex. Lab. Code Ann. § 451.001(1) (West 2015); *Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 312 (Tex. 2015). "An employer who violates this statute is subject to a retaliation claim, which constitutes 'an exception to the traditional doctrine of employment at will found in Texas law.' " *Melendez*, 477 S.W.3d at 312 (quoting *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996) (internal quotation marks omitted)).

 The plaintiff has the burden of making a prima facie showing that he, in good faith, filed a workers' compensation claim and that there is a causal link between his filing of the claim and his discharge or other act of discrimination by the employer. *See* Tex. Lab. Code Ann. § 451.001(1); *Dallas County v. Holmes*, 62 S.W.3d 326, 329 (Tex. App.—Dallas 2001, no pet.). To establish a causal connection between his firing and his filing of a workers' compensation claim, an employee must demonstrate that, but for the filing of the claim, "the employer's action would not have occurred when it did." *Melendez*, 477 S.W.3d at 312; *Parker v. Valerus Compres-*

*sion Servs., LP*, 365 S.W.3d 61, 67 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (citing *Cazarez*, 937 S.W.2d at 450); *Hertz Equip. Rental Corp. v. Barousse*, 365 S.W.3d 46, 54 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). The employee's participation in the protected activity does not need to be proven as the sole cause of the employment action. *Parker*, 365 S.W.3d at 67; *Barousse*, 365 S.W.3d at 54.

 An employee may prove the causal link between his termination and his workers' compensation claim by direct or circumstantial evidence. *Melendez*, 477 S.W.3d at 312; *Parker*, 365 S.W.3d at 67. This includes, for example, evidence that the person making the decision to terminate knew of the workers' compensation claim, that an employer expressed a negative attitude toward the employee's injury, that an employer discriminated against the employee by treating him differently from similarly-situated employees, that an employer failed to adhere to an established company policy, or that the employer's stated reason for the termination was false. *Melendez*, 477 S.W.3d at 312 (citing *Cazarez*, 937 S.W.2d at 451); *Parker*, 365 S.W.3d at 67. "Little or no lapse in time between the plaintiff's compensation claim and the employer's adverse employment action is also circumstantial evidence of a retaliatory motive." *Parker*, 365 S.W.3d at 67. Furthermore, "[t]his evidence is relevant for determining whether a causal link exists, both in examining whether the employee established a prima facie case and the ultimate issue of whether the employee proved a retaliatory motive for the adverse employment action." *Parker*, 365 S.W.3d at 67.

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a "legitimate, non-discriminatory reason for its actions," after which the

burden shifts back to the employee to "'produce controverting evidence of a retaliatory motive' in order to survive a motion for summary judgment." *Id.* (quoting *Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 519 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)). "The employee must present evidence that the employer's asserted reason for the discharge or other adverse employment action was pretextual or 'challenge the employer's summary judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason.'" *Id.* at 67–68 (quoting *Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex. App.—Dallas 2004, no pet.)).

## C. Analysis

Bilfinger moved for summary judgment, arguing, in part, that Cardenas could not establish a causal link between engaging in a protected activity and his termination. *See* TEX. LAB. CODE ANN. § 451.001(1); *Parker*, 365 S.W.3d at 67. Cardenas argues on appeal that he presented sufficient evidence establishing a causal link, and he argues that he presented sufficient evidence that Bilfinger terminated him "solely because he hired a lawyer and initiated a workers' compensation claim." Specifically, Cardenas asserts that he presented evidence that the person who made the termination decision had knowledge of his workers' compensation claim, that Bilfinger demonstrated a negative attitude toward his injury, and that the stated reason for his discharge was false. Bilfinger argues that none of Cardenas's purported evidence on these issues is sufficient to establish a causal link between his pursuit of a workers' compensation claim and his termination, and we agree.

Cardenas failed to demonstrate that Narvaez, the Project's superintendent who made the decision to terminate Cardenas, knew of the workers' compensation claim. *See Melendez*, 477 S.W.3d at 312 (retaliation plaintiff may establish causal link by circumstantial evidence, including evidence that person making decision to terminate knew of workers' compensation claim). Cardenas points to his Termination Statement, which contains the statement, "This is to certify that I have suffered NO injury while working for [Bilfinger] that has not been previously reported." He argues that this statement, which was signed by Narvaez, "demonstrates that the Bilfinger supervisor who made the termination decision was aware of the injury suffered by Cardenas and that it had been reported," and it "raises a material fact issue as to whether the persons making the termination decision had knowledge of the workers' compensation claim." However, that statement was part of a pre-printed form and does not actually identify any previous injury suffered by Cardenas. Although Cardenas asserts that Taff, Juarez, and Narvaez knew of his injury, knowledge that Cardenas had been injured on the job is not the same as knowledge that he was pursuing a workers' compensation claim. Cardenas also averred that he told an insurance adjuster for Bilfinger's workers' compensation insurance carrier that he had retained an attorney to pursue a workers' compensation claim, but nothing in the record suggests that Cardenas had informed anyone at Bilfinger about his intention to pursue his workers' compensation claim.

To the contrary, Bilfinger presented summary-judgment evidence that Cardenas did not discuss his claim with anyone at Bilfinger. Narvaez averred that he was solely responsible for deciding to terminate Cardenas and that he did not know of Cardenas's workers' compensation claim at the time he made that decision. Narvaez provided an affidavit stating that although

Cardenas was injured on September 25, 2013, he "returned to the Project" following his injury. Narvaez further averred that he decided to terminate Cardenas as part of a reduction in workforce on the Project and that, at the time he made the decision to terminate Cardenas, he "had no knowledge that Mr. Cardenas had hired an attorney to file a workers' compensation claim on his behalf" and that he was "unaware at the time of Mr. Cardenas's discharge that a workers' compensation claim had been filed by him, on his behalf, or for his benefit." The timeline established by the summary judgment record supports Narvaez's affidavit. Bilfinger presented evidence that multiple electricians and electrician helpers were terminated due to "reduction in force" in the few weeks before and after Cardenas's termination. Narvaez averred that he had decided to terminate Cardenas and several other electrical workers on October 11, 2013, while Cardenas averred that he retained an attorney on October 14, 2013, and Bilfinger first received notice of that claim on October 16, 2013.

 Cardenas also argues that he demonstrated that Bilfinger had a negative attitude toward his injury because his working hours were reduced following his injury and because Bilfinger was late in filing the First Report of Injury with its insurance carrier. Regarding the reduction of his work hours, nothing in the record supports this contention. Cardenas points to his pleadings as asserting that he was placed on light duty and eventually told that he would not be given a full forty hours per week of light duty work. However, pleadings generally do not constitute competent summary-judgment evidence. *See, e.g., Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer,* 904 S.W.2d 656, 660 (Tex. 1995) (party's pleadings are not substitute for competent evidence, even if pleadings are sworn or verified); *Derbigny v. Bank One,* 809 S.W.2d 292, 295 (Tex. App.—Houston [14th Dist.] 1991, no writ) ("Pleadings simply outline the issues; they are not evidence, even for purposes of summary judgment, let alone a trial on the merits."). Cardenas's affidavit states only that he was placed on light duty and paid his regular hourly rate prior to his termination, and he testified in his deposition that Juarez at one point mentioned that Cardenas was going to have his hours "cut down to 40 hours" a week, but he did not testify or present other evidence that such a reduction actually occurred.

Regarding the timing of Bilfinger's filing of the First Report of Injury, Cardenas argues that Bilfinger was required to complete the First Report of Injury within eight days of being notified of the injury. *See* Tex. Lab. Code Ann. § 409.005(b) (West 2015) (providing that employer shall file report to insurance carrier "not later than the eighth day after ... the employee's absence from work for more than one day due to an injury"). He asserts that the fact that Bilfinger filed the First Report of Injury with its workers' compensation insurance carrier on October 16, 2013, thirteen days after the injury was reported, constituted "circumstantial evidence of a negative attitude toward the injury suffered by Cardenas thus creating a causal link between Cardenas's workers' compensation claim and his termination." However, Cardenas presented no summary-judgment evidence indicating why Bilfinger filed the report when it did. In particular, nothing in the record demonstrates that Cardenas ever missed an entire day of work due to the injury, as required to trigger an employer's obligation to file a report of injury pursuant to Labor Code section 409.005. *See id.* § 409.005(a) (providing that "[a]n employer shall report to the employer's insurance carrier if ... an injury results in the absence of an employ-

ee of that employer for work for more than one day"). Cardenas's own affidavit indicated that he was at work on the two days following his injury—days that he averred he visited the offices of his supervisors to inform them of his back pain—and that he was then placed on light duty. Narvaez's affidavit indicated that Cardenas returned to work the day after his injury. Bilfinger's summary judgment evidence demonstrates that it filed the report with its insurance carrier on October 16, 2013, the same day the carrier notified Bilfinger of Cardenas's claim.

Cardenas also asserts that the timing between Bilfinger's filing of the report on October 16, 2013 and his termination on October 17, 2013 constituted circumstantial evidence of a causal link. While it is true that evidence of temporal proximity between making a workers' compensation claim and termination may be circumstantial evidence of a retaliatory motive, the evidence here does not support such an inference. *See Parker*, 365 S,W.3d at 67. Although it is true that Cardenas was fired the day after Bilfinger filed its First Report of Injury with its insurance carrier, the summary-judgment record demonstrates that Bilfinger supervisor Narvaez did not know of the claim at that time and that he had already decided to terminate Cardenas—along with several other electricians and electrician's helpers—on October 11, 2013, which was several days before Cardenas retained his attorney to pursue his workers' compensation claim.

Finally, Cardenas asserts that he presented evidence that Bilfinger's stated reason for terminating him—i.e., that he was terminated as part of a reduction in workforce on the Project—was false because he included evidence that Bilfinger had terminated four other employees between 2007 and 2011 due to a "reduction in force" shortly after those employees had filed workers' compensation claims. We disagree that this evidence demonstrated a pattern or history of improperly terminating employees. Cardenas presented evidence that four employees were terminated within days of Bilfinger's filing of a First Report of Injury to its insurance carrier—he submitted the report of injury for each employee and the notice of termination showing that each was terminated due to a "reduction in force." However, Cardenas presented no evidence regarding if or when these employees actually filed workers' compensation claims; the record indicates only that Bilfinger filed a report of injury for each of those employees with its insurance carrier.

Furthermore, Cardenas presented no evidence that these employees were similarly situated to each other or to him— there is no evidence regarding the nature of their injuries, their conduct before or after the injuries, or the nature of the projects on which they were employed. *See Parker*, 365 S.W.3d at 69 ("Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct.") (quoting *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005)). Cardenas's conclusory statements in his affidavit and in his deposition that he was terminated because of his injury and his conclusory statements that four other workers were fired for the same reason are not summary-judgment evidence sufficient to raise a fact issue regarding a causal link between his claim and his termination. *See id.* (conclusory statements about treatment of other employees are insufficient to raise fact issue); *see also Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 823 (Tex. App.— Houston [1st Dist.] 2012, pet. denied) (employee's subjective beliefs of retaliation are merely conclusions and do not raise fact

issue precluding summary judgment in retaliatory-discharge claim).

We conclude that Cardenas failed to bring forward evidence establishing a prima facie case of workers' compensation retaliation. *See* TEX. LAB. CODE ANN. § 451.001(1); *Holmes*, 62 S.W.3d at 329; *see also Melendez*, 477 S.W.3d at 312 (to establish causal connection, employee must show that adverse employment action would not have occurred when it did but for filing of workers' compensation claim).

 Even if he had made a prima facie showing, Bilfinger provided a "legitimate, non-discriminatory reason for its actions." *See Parker*, 365 S.W.3d at 67. Bilfinger presented evidence, in the form of Narvaez's affidavit and other evidence, that Cardenas was terminated because the Project for which he was hired was nearing completion and Bilfinger was reducing its workforce on the Project. Narvaez asserted in his affidavit that this practice of reducing the workforce as a project neared completion was a standard practice in the industry, and Cardenas agreed in his deposition. Taff and Juarez also testified that personnel needs for the Project reached their peak in July 2013 when Cardenas was hired and that the Project was wrapping up by September 2013. In the course of deposing Cardenas, Bilfinger identified multiple electricians and electrician helpers terminated as part of a reduction in force in the weeks before and after Cardenas was terminated. Narvaez averred that he had already made the decision to terminate Cardenas—along with several other electrical workers—prior to the day that Cardenas obtained his attorney to file a workers' compensation claim on his behalf. Cardenas has not produced any controverting summary-judgment evidence of a retaliatory motive, as is necessary to survive a motion for summary judgment. *See Parker*, 365 S.W.3d at 67.

We overrule Cardenas's first issue.

## Continuance

In his second issue, Cardenas argues that the trial court erred in granting Bilfinger's motion for summary judgment because the discovery period had not ended and thus the motion was premature. In his third issue, Cardenas argues that the trial court erred in granting Bilfinger's motion for summary judgment because he did not receive adequate notice of the summary-judgment hearing.

### A. Standard of Review

 When a party contends that he has not had an adequate opportunity for discovery before the consideration of a no-evidence summary judgment, he "must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *Killingsworth v. Hous. Auth. of City of Dall.*, 447 S.W.3d 480, 495 (Tex. App.—Dallas 2014, pet. denied). Here, Cardenas filed a verified motion for continuance. The trial court never explicitly ruled on this motion, but it did grant Bilfinger's motion for summary judgment. A trial court's granting of a motion for summary judgment constitutes an implicit decision to overrule a motion for continuance filed by the nonmovant. *See West v. SMG*, 318 S.W.3d 430, 436 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

 We review a trial court's denial of a motion for continuance for an abuse of discretion on a case-by-case basis. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). Generally, it is not an abuse of discretion for a trial court to deny a motion for continuance if the moving party has received the 21–days'

notice required by Rule 166a(c). *Carter v. MacFadyen*, 93 S.W.3d 307, 310 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). A party who seeks more time to oppose a summary judgment must describe the evidence sought, explain its materiality, and show the due diligence he used to obtain the evidence. *Id.*; *see also* TEX. R. CIV. P. 166a(g) ("Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may ... order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."). The affidavit or verified motion must show why the continuance is necessary, and conclusory allegations are not sufficient. *Carter*, 93 S.W.3d at 310.

■ Courts may consider the following nonexclusive factors when deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery: the nature of the case, the length of time the case and motion for summary judgment have been on file, the nature of the evidence needed to controvert a no-evidence motion, the materiality and purpose of the discovery sought, the amount of discovery that has already taken place, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Joe*, 145 S.W.3d at 161; *McInnis v. Mallia*, 261 S.W.3d 197, 201 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

■ When a no-evidence motion is filed before the end of the discovery period, as Cardenas argues happened here, the motion may be appropriate as long as the nonmovant had adequate time for discovery. *See McInnis*, 261 S.W.3d at 200; *see also Lucio v. John G. & Marie Stella Kenedy Mem'l Found.*, 298 S.W.3d 663,

670 (Tex. App.—Corpus Christi 2009, pet. denied) ("Rule 166a(i) begins with the phrase, '[a]fter adequate time for discovery' not 'after a pretrial scheduling discovery period has concluded,' and therefore, it does not support [appellant's] argument" that trial court abused its discretion in granting no-evidence summary judgment during discovery period). "[O]ur principal task is to determine if [the] record provides support for the trial court's consideration of a no-evidence summary-judgment motion" before the end of the designated discovery time frame. *McInnis*, 261 S.W.3d at 200. The "pertinent date for this inquiry is the final date on which the no evidence motion is presented to the trial court for ruling." *Id.*

### B. Analysis

■ Although Cardenas argues that Bilfinger filed its motion before the discovery period ended, the record does not contain a docket control order setting out a specific time for discovery. Furthermore, this suit does not involve complex issues or evidence. Cardenas filed his suit and his initial discovery requests on February 5, 2015, more than a year before Bilfinger first notified Cardenas on March 3, 2016, of the hearing on its motion for summary judgment. Bilfinger filed its motion and served Cardenas with notice electronically on April 6, 2016, fourteen months after Cardenas filed suit. The trial court conducted the hearing on April 29, 2016. The record contains multiple affidavits, depositions, and other discovery responses, indicating that discovery continued after Cardenas's original February 5, 2015 discovery requests.

In his verified motion for continuance, Cardenas asserted generally that a continuance was necessary in order for him to depose six witnesses he identified as former Bilfinger employees. Other than

stating that he wanted to depose them regarding Bilfinger's "true motives in terminating [him]," Cardenas failed to identify when or how these individuals were employed by Bilfinger, the nature of their potential knowledge regarding the circumstances surrounding his termination, the relevance or materiality of their potential testimony, or his prior efforts to obtain the requested discovery in the fourteen months the case had been on file.

Considering all of these factors, we conclude that the trial court did not abuse its discretion in impliedly overruling Cardenas's motion for continuance. *See Joe*, 145 S.W.3d at 161; *McInnis*, 261 S.W.3d at 200.

We overrule Cardenas's second issue.

In his third issue, Cardenas incorrectly asserts that Bilfinger was required to serve him with its motion for summary judgment at least twenty-four days prior to the date of the hearing. However, Rule 166a(c) does not require twenty-four days' notice. Rule 166a(c) requires that both the motion for summary judgment and notice of the summary-judgment hearing be served on opposing counsel at least twenty-one days before the hearing date. Tex. R. Civ. P. 166a(c). Bilfinger served Cardenas with notice of the hearing on March 3, 2016, and it served Cardenas with the motion for summary judgment on April 6, 2016, more than twenty-one days before the hearing that was held on April 29, 2016. Cardenas received proper notice of the hearing and motion for summary judgment, and the trial court did not err in implicitly denying his motion for continuance on this ground. *See id.; see also Carter*, 93 S.W.3d at 310 (generally, court does not abuse its discretion by denying continuance when party has received twenty-one days' notice required by Rule 166a(c)). Cardenas's reliance on cases construing the deadline for service of a motion for summary judgment by mail is inappropriate here because Bilfinger served the motion electronically. *See Lewis v. Blake*, 876 S.W.2d 314, 316 (Tex. 1994).

We overrule Cardenas's third issue.

### Conclusion

We affirm the judgment of the trial court.