# IN THE SUPREME COURT OF TEXAS

════════════
No. 14-0006
════════════

KINGSAIRE, INC. D/B/A KINGS AIRE, INC., PETITIONER,

v.

JORGE MELENDEZ, RESPONDENT

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**Argued September 3, 2015**

JUSTICE LEHRMANN delivered the opinion of the Court.

JUSTICE GUZMAN filed a concurring opinion.

The principal issue in this case is whether legally sufficient evidence supports the jury's finding that the petitioner fired an employee because he filed a workers' compensation claim. The trial court rendered judgment on the verdict, and the court of appeals affirmed, holding that legally and factually sufficient evidence supported the verdict and that the jury charge was legally correct. Because the employee has presented no evidence that his termination resulted from anything other than the uniform enforcement of a reasonable leave policy, we reverse and render judgment for the petitioner.

## I. Background

Petitioner Kingsaire, Inc., doing business as Kings Aire, Inc. (Kings Aire), is a family-owned heating, ventilation, and air-conditioning company in El Paso. In May 2004, Kings Aire hired Jorge Melendez as a "helper tradesman" whose initial duties included welding frames for refrigeration units. A few months after he was hired, Melendez transferred to the electrical department as a helper. A Personnel Action Form reflects that, in March 2009, Kings Aire gave Melendez a raise and promoted him from helper to "apprentice lead man."

On July 2, 2009, Melendez was participating in demolition work at a job site when a light fixture fell and lacerated his wrist, cutting two tendons and the median nerve. He was taken to the emergency room and was met at the hospital by Fred Quintana, Kings Aire's safety coordinator. Quintana assisted Melendez with a workers' compensation claim, and Kings Aire "initiated the filing" of the claim. Melendez had surgery on his wrist on July 20, 2009.

On July 21, Kings Aire sent Melendez a notice about the Family and Medical Leave Act (FMLA) "in reference to your request for leave." The notice informed Melendez that he was eligible for FMLA leave, that he was entitled to up to twelve weeks of unpaid leave in the calendar year, and that he would be required to furnish status updates every two weeks.[1] The letter accompanying the notice stated that, effective July 3 (the first day Melendez was absent because of his injury), Melendez would be "placed on Family Medical Leave during your workers compensation leave."

---

[1] As a covered employer under the FMLA, Kings Aire is required to provide up to twelve weeks per year of unpaid, job-protected leave to eligible employees for, among other things, a serious health condition that makes the employee unable to perform his job. *See* 29 U.S.C. §§ 2611(2), (4)(A); 2612(a)(1)(D), (c); 2614(a), (c).

Melendez testified that he did not specifically request FMLA leave. However, the record does not reflect that he objected to that classification.

Over the next several months, Melendez provided the requested status reports from his treating physicians. When Melendez's twelve weeks of FMLA leave expired on September 24, 2009, he had not been released to return to work. On September 28, Kings Aire informed Melendez by letter that his FMLA leave had expired and that his employment had been terminated September 25 pursuant to company policy. In the letter, Kings Aire invited Melendez to reapply for available positions when he obtained a physician's release and was able to return to work.

One month later, Melendez sued Kings Aire for breach of contract and for wrongfully discharging him in retaliation for filing a workers' compensation claim in good faith. He asserted several additional claims relating to his termination that have been either abandoned or dismissed and are no longer at issue.[2] Following a trial on the merits, the jury found in Melendez's favor on both his breach-of-contract claim, which related to Kings Aire's failure to remit accrued vacation pay upon his termination,[3] and his retaliation claim. The trial court rendered judgment on the jury's verdict, awarding Melendez past and future lost earnings and employee benefits, vacation-pay

---

[2] In addition to the retaliation and breach-of-contract claims, Melendez initially alleged that Kings Aire violated the FMLA and fired him for refusing to perform an illegal act in violation of the *Sabine Pilot* doctrine. He also sought exemplary damages. Melendez voluntarily dismissed the FMLA claim before trial, and the trial court granted a directed verdict for Kings Aire on the *Sabine Pilot* claim and the request for exemplary damages. Melendez did not appeal the directed verdict.

[3] When Melendez was discharged, he had forty hours of accrued, unused vacation leave for which Kings Aire had not paid him. Shortly after Melendez filed suit and served Kings Aire with citation, Kings Aire issued him a check for $418.06, purportedly representing the amount of unused vacation. Melendez's attorney instructed him not to cash that check, and the jury ultimately awarded Melendez $500.00 on his breach-of-contract claim.

damages, prejudgment interest on the past-damages awards, and attorney's fees relating to the breach-of-contract claim.

Kings Aire appealed only the portion of the judgment on the retaliation claim, challenging the sufficiency of the evidence to support both liability and damages and arguing that the trial court erroneously charged the jury on that claim. The court of appeals affirmed, 416 S.W.3d 898 (Tex. App.—El Paso 2014), and we granted Kings Aire's petition for review.

## II. Background on Retaliation Claims

The Texas Labor Code states in pertinent part that "[a] person may not discharge or in any other manner discriminate against an employee because the employee has . . . filed a workers' compensation claim in good faith." TEX. LAB. CODE § 451.001(1). An employer who violates this statute is subject to a retaliation claim, which constitutes "an exception to the traditional doctrine of 'employment at will' found in Texas law." *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996) (citation and internal quotation marks omitted).

In *Cazarez*, we examined the issue of "what evidence is necessary to prove a retaliatory firing under section 451.001." *Id.* at 450. Applying the causation standard applicable to claims brought under the Whistleblower Act,[4] we held that an employee must show that the employer's prohibited action "would not have occurred when it did" absent the employee's protected conduct. *Id.* (quoting *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 637 (Tex. 1995)).

---

[4] The Whistleblower Act similarly prohibits discrimination against an employee "because" the employee engaged in certain protected activities. *Cazarez*, 937 S.W.2d at 450; TEX. GOV'T CODE §§ 554.002, .004(a).

4

A retaliation plaintiff generally may rely on circumstantial causation evidence. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 389 (Tex. 2005) (per curiam). Such circumstantial evidence may include, for example, an employer's expression of a negative attitude toward the employee's injury, an employer's discriminatory treatment of the employee compared with similarly situated employees, an employer's failure to adhere to established company policy, and evidence that the employer's stated reason for termination was false. *Cazarez*, 937 S.W.2d at 451 (citation omitted). We also confirmed in *Cazarez* that termination pursuant to the "[u]niform enforcement of a reasonable absence-control [policy] . . . does not constitute retaliatory discharge." *Id.* (quoting *Tex. Division–Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 313 (Tex. 1994) (per curiam) (first alteration in *Cazarez*)). Accordingly, if termination "was required by the uniform enforcement" of such a policy, circumstantial evidence that could otherwise support a causal link is "immaterial." *Haggar Clothing*, 164 S.W.3d at 388.

In *Haggar Clothing*, for example, a Haggar employee was injured at work, filed a workers' compensation claim, and took leave. *Id.* at 387. A year later, Haggar informed the employee that her employment was being terminated pursuant to company policy that the maximum time an employee could remain on leave, regardless of the reason, was one year. *Id.* The employee presented evidence that Haggar's safety-incentive policies pressured employees not to report workplace injuries, that the company's plant managers were under economic pressure to minimize workers' compensation claims, that she had felt pressured to return to work the day of the accident, and that a manager had threatened not to pay for post-accident treatment. *Id.* at 388. We noted that this "may constitute circumstantial evidence supporting a causal link between [the employee's]

5

termination and her filing a workers' compensation claim," but that it was "immaterial if [the employee's] termination was required by the uniform enforcement of Haggar's one-year leave-of-absence policy." *Id.* Because no evidence showed that the policy was applied in a discriminatory manner or, in turn, that Haggar's explanation for the termination was false, we rendered judgment for Haggar. *Id.* at 389.

With this background, we turn to the issues presented. Kings Aire argues that (1) legally insufficient evidence supports the jury's retaliation finding, and (2) the trial court erred in failing to include in the jury charge a separate question and instruction on whether Kings Aire terminated Melendez pursuant to the uniform enforcement of a reasonable absence-control policy. Because we agree with Kings Aire on the first issue, we need not reach the second.

### III. Legal Sufficiency Analysis

### A. Standard of Review

Kings Aire contends that legally insufficient evidence supports the jury's finding that Melendez was fired because he filed a workers' compensation claim in good faith.[5] We will sustain a legal-sufficiency challenge if no more than a scintilla of evidence is offered to prove a finding. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014). In conducting a legal-sufficiency review, we consider the evidence and reasonable inferences tending to support the finding and disregard contrary evidence and inferences. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001). But "a jury

---

[5] In accordance with the causation standard we announced in *Cazarez*, the trial court instructed the jury that "[a]n employer does not discharge an employee for filing or causing to be instituted a worker's compensation claim in good faith if the employer would have discharged the employee when he did even if the employee had not filed or caused to be instituted a worker's compensation claim in good faith."

6

may not reasonably infer an ultimate fact from meager circumstantial evidence which could give rise to any number of inferences, none more probable than another." *Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex. 2013) (citation and internal quotation marks omitted).

### B. Analysis

Kings Aire's position throughout these proceedings has been that it terminated Melendez upon expiration of his FMLA leave pursuant to the company's uniform enforcement of a reasonable leave policy. As we stated in *Cazarez*, "[i]f an employee's termination is required by the uniform enforcement of a reasonable absentee policy, then it cannot be the case that termination would not have occurred when it did but for the employee's assertion of a compensation claim or other conduct protected by section 451.001." 937 S.W.2d at 451. We must therefore evaluate whether Kings Aire enforced its leave policy uniformly and whether such uniform enforcement required that Melendez be discharged when his FMLA leave expired.

Kings Aire's written personnel policies include a section on employee leave that begins:

A leave of absence may be granted for any reason acceptable to Kings Aire or required by law. . . . Except as discussed below or required by law, a leave generally may not exceed three months, and an employee who fails to return to work within three months of the leave of absence will be terminated.

The leave policy continues:

Unless the leave falls under the provisions of the Family and Medical Leave Act, acceptance by an employee of a leave of absence without pay does not entitle the employee to return to the same job or a comparable job or any other job with Kings Aire upon completion of the leave of absence. It merely provides the employee with an opportunity to return, subject to an available job opening, upon the completion of the leave of absence.

The policy lists seven categories of leave: family/medical (FMLA); workers' compensation; jury duty; military; sick; funeral; and other.

The policy's subsection on FMLA leave explains that Kings Aire provides as much as twelve weeks of unpaid FMLA leave per rolling twelve-month period to eligible employees in certain circumstances, including when an employee has a serious health condition that renders him unable to perform his job. The policy also confirms that "[i]n no event can family/medical leave last for longer than twelve weeks." With respect to employee reinstatement after taking FMLA leave, the policy states:

> At the beginning of the family/medical leave, the employee is to inform Kings Aire of his or her expected return date. Employees returning before the expiration of their twelve (12) weeks of leave will be returned to the same or a substantially equivalent position.
>
> If the employee takes leave on account of a serious medical condition, the employee will be required to present a medical certification of fitness to work before being permitted to return. If an employee fails to provide the medical certification within fifteen days after the conclusion of leave, the employee will be terminated.

Another subsection discussing workers' compensation leave explains that Kings Aire is covered by workers' compensation insurance, that the insurance covers employees who suffer an occupational injury or illness, that employees who are unable to work may exhaust their vacation time or receive income benefits through workers' compensation insurance, and that employees who lose time because of such injuries must provide an excuse from their treating physician and a clearance to return to work. The subsection does not contain specific limitations on the amount of workers' compensation leave permitted.

**1. Kings Aire's Uniform Enforcement of Its Leave Policy Mandated Melendez's Termination Upon Expiration of FMLA Leave.**

As noted, Melendez's twelve weeks of FMLA leave expired on September 24, 2009, and his doctors had not released him to return to work by that date. According to Melendez's medical records, with the exception of a two-week period in June 2010 and another in September 2010 in which he was released with restrictions, his doctors did not release him to return to work until January 2011, again with restrictions.[6] Kings Aire contends that its leave policy provided no more than twelve weeks' FMLA leave and that it consistently terminated employees who failed to return to work when that leave expired.

Kings Aire's personnel records reflected that four other employees had been terminated for the same reason. Jose Villa, Kings Aire's Chief Financial Officer, testified that two of those employees, like Melendez, had been on workers' compensation leave because of work-related injuries. A third employee went on leave because of a serious illness and was terminated when his FMLA leave expired.[7] As to the fourth employee, Villa initially testified that he could not recall whether that employee's leave was because of a work-related injury, but subsequently testified that it was for personal health reasons.

---

[6] Melendez submitted one medical record dated October 1, 2009—one week after his FMLA leave expired—indicating that he was "[r]eleased to regular/full duty" by Dr. Robert Bell, one of his treating physicians at El Paso Orthopaedic Surgery Group. Although that record was admitted at trial, it was not produced by the Surgery Group and was not contained in the Group's file on Melendez. All the workers' compensation status reports submitted to the responsible state agency, including reports signed by Dr. Bell, were consistent with the fact that Melendez was not released to work until well after the conclusion of his FMLA leave.

[7] A post-dated termination form was filled out a few days before the leave expiration date because the employee was in the office on an unrelated matter and had informed Kings Aire that he would not be able to return to work when his leave expired.

Villa also testified that several employees suffered work-related injuries, filed workers' compensation claims, and took fewer than twelve weeks of leave. Those employees all returned to work without incident. This evidence demonstrates that Kings Aire consistently applied its leave policy by terminating employees who did not return to work upon the expiration of their FMLA leave, regardless of the specific reason for taking leave, while allowing those who took less than the maximum amount of FMLA leave to return to their positions in the company.[8]

Melendez does not dispute that Kings Aire's leave policy was consistently applied with respect to other employees. However, citing *Cazarez*, he argues that the evidence does not support Kings Aire's claim that he was terminated in accordance with the policy. In *Cazarez*, the employer claimed that it fired the plaintiff for violating its "three day no call/no show rule." 937 S.W.2d at 446. We recognized that "if Continental enforced the [three-day] rule uniformly, and if [the plaintiff] violated it, then [she] could not have been terminated in violation of the Anti-Retaliation Law." *Id.* at 451. But we affirmed the judgment for the plaintiff, in part because sufficient evidence showed that she did not violate the three-day rule. *Id.* at 461–62.

Melendez argues that Kings Aire's leave policy gave employees on FMLA leave a fifteen-day grace period following the leave's expiration to provide medical certification that they were fit to return to work. Melendez further contends that he was not given this grace period and that his termination the day after his leave expired was therefore inconsistent with the policy. The particular policy provision at issue, quoted above, states:

---

[8] Kings Aire had no instances in which employees suffered work-related injuries and exhausted their FMLA leave but did not file workers' compensation claims.

10

> If the employee takes [FMLA] leave on account of a serious medical condition, the employee will be required to present a medical certification of fitness to work before being permitted to return. If an employee fails to provide the medical certification within fifteen days after the conclusion of leave, the employee will be terminated.

Kings Aire disputes Melendez's interpretation of this language, arguing that it must be read in conjunction with the policy's absolute twelve-week limitation on FMLA leave and that the grace period applies only to employees who return to work before twelve weeks have expired.

The court of appeals concluded that the policy was ambiguous, that Melendez provided a "plausible construction" of it, and that "the jury was free to draw the inference that Kings Aire was not acting in accordance with the terms of its cause-neutral absence control policy." 416 S.W.3d at 908–09. Assuming that the policy language is ambiguous, we nevertheless disagree with the court of appeals' conclusion. The issue is whether "an employee's termination is required by the uniform enforcement of a reasonable absentee policy." *Cazarez*, 937 S.W.2d at 451. Kings Aire uniformly enforced its policy by terminating employees who did not return to work immediately after their FMLA leave expired. Waiting an additional fifteen days to fire Melendez would have constituted a departure from that uniform enforcement.

The same court of appeals that ruled in Melendez's favor rejected a similar argument in *Lozoya v. Air Systems Components, Inc.*, 81 S.W.3d 344 (Tex. App.—El Paso 2002, no pet.). In that case, the plaintiff argued that the employer's stated reason for termination—uniform enforcement of a reasonable leave policy—was false because the policy section on which the employer relied was vague. *Id.* at 349. Affirming summary judgment for the employer, the court held that, even assuming reasonable people could disagree about the policy's meaning, the plaintiff made no

11

showing that it was applied inconsistently and thus provided no evidence that the stated reason for termination was false. *Id.* This reasoning is sound and applies here.

By contrast, in *Cazarez* the plaintiff raised a fact issue whether she violated an unambiguous rule about work absences; the rule's meaning was not in dispute. 937 S.W.2d at 451; *see also Echostar Satellite LLC v. Aguilar*, 394 S.W.3d 276, 287 (Tex. App.—El Paso 2012, pet. denied) (holding that sufficient evidence demonstrated that the employer did not terminate the plaintiff in strict compliance with the absence policy's unambiguous terms, and thus that his termination was not required by the policy's uniform enforcement). Barring unusual circumstances, when an employer terminates an employee consistent with the employer's uniform enforcement of its leave policy, even when an alternative interpretation of the policy would not require termination, that uniform enforcement is no evidence that an employee's termination "would not have occurred when it did but for the employee's assertion of a compensation claim or other conduct protected by section 451.001." *Cazarez*, 937 S.W.2d at 451. Here, as explained, Melendez's termination was consistent with Kings Aire's uniform enforcement of its leave policy.

## 2. Melendez Was Not Terminated or Retaliated Against Before His FMLA Leave Expired.

Melendez alternatively argues that he was not terminated in accordance with Kings Aire's leave policy because the jury reasonably could have concluded that he was actually terminated much earlier than the date his FMLA leave expired.[9] To support that assertion, Melendez relies on

---

[9] Somewhat inconsistently, Melendez also notes in the fact section—but not the argument section—of his brief that he was demoted "at some unknown date after his injury." No paperwork or testimony specifically reflects a demotion, and the record shows that his wage rate was not affected during his leave. The sole basis for this assertion is that the Personnel Action Form documenting Melendez's termination erroneously stated his position title as helper

12

evidence that Jorge Reyes, then-manager of Kings Aire's electrical department, instructed Melendez to return his uniforms about three weeks after he was injured. Melendez argues that this evidence implies he was terminated at that time because Kings Aire's policies "equate the return of uniforms with termination of employment." The court of appeals rejected this argument, and so do we. 416 S.W.3d at 907.

The trial evidence reflected that Kings Aire employees return their uniforms for several reasons. Melendez testified that he turned in his uniforms on a weekly basis for cleaning during his employment. Villa testified that Kings Aire's standard practice is for employees who are expected to be on extended leave to return their uniforms, which the company rents from a third party. Reyes similarly testified that he asked Melendez to return his uniforms to ensure they were accounted-for because Kings Aire rented them and would be charged if any were missing. Finally, employees are required to return their uniforms upon termination from employment. But Melendez was not told that he was terminated when he returned his uniforms, no paperwork or other evidence reflects termination at that time, and he visited the office regularly during his leave to provide the requested status reports. We hold that the jury could not reasonably infer from this evidence that Melendez was terminated three weeks into his leave in contravention of company policy. At best, the evidence surrounding Melendez's return of his uniforms constitutes "meager circumstantial evidence" that "could give rise to any number of inferences, none more probable than another." *Hancock*, 400 S.W.3d at 70.

---

rather than apprentice. The manager who prepared the form testified that using this label was a "mistake" on his part, and nothing in the record contradicts this testimony. In any event, Melendez does not appear to argue that he was demoted in retaliation for filing a workers' compensation claim.

Melendez also complains that, about the same time he was told to return his uniforms, Kings Aire unilaterally placed him on FMLA leave while misrepresenting that Melendez had requested it. In doing so, Melendez argues, Kings Aire effectively set his termination in motion by creating the twelve-week return-to-work deadline associated with FMLA leave that otherwise would not have existed. The court of appeals agreed with Melendez on this point, concluding:

> [A] fact question [exists] as to whether Melendez elected to switch from the indefinite worker's compensation leave to the time-limited FMLA leave himself—in which case Kings Aire properly allowed a cause-neutral absence control "clock" to expire before termination—or whether Kings Aire switched him to time-limited FMLA leave without his consent for the specific purpose of retaliating from behind a cause-neutral veil.

416 S.W.3d at 910. Both Melendez's argument and the court of appeals' conclusion are flawed.

As an initial matter, the assertion that Kings Aire acted improperly by placing Melendez on FMLA leave, regardless of whether he specifically requested it, ignores Kings Aire's legal obligations under the FMLA itself. FMLA regulations confirm that the *employer* is responsible "for designating leave as FMLA-qualifying, and for giving notice of the designation to the employee." 29 C.F.R. § 825.300(d). Further, when an employer has enough information to determine whether the leave is taken for an FMLA-qualifying reason, the employer must notify the employee whether the leave will be designated and counted as FMLA leave. *Id.* Importantly, once the employer knows the leave is being taken for an FMLA-qualifying reason, "the employer must notify the employee as provided in § 825.300(d)." *Id.* § 825.301(a). Thus, once Kings Aire had sufficient information to determine that Melendez required leave because of a serious health condition—an FMLA-qualifying reason—Kings Aire had an obligation to designate the leave as FMLA leave and notify Melendez,

14

which it did the day after his surgery.[10]  Had Kings Aire failed to do so, it would have risked violating federal law.

Moreover, Melendez ignores that the FMLA designation granted him significant protections he otherwise would not have had.  As noted, under Kings Aire's policies an employee who takes unpaid, non-FMLA leave is not entitled "to return to the same job or a comparable job *or any other job* with Kings Aire upon completion of the leave of absence," but does have "an opportunity to return, subject to an available job opening."  (Emphasis added).  By contrast, employees like Melendez who are eligible for FMLA leave have job security, including continued health insurance, for as long as twelve weeks.  29 U.S.C. §§ 2612(a)(1)(D); 2614(a), (c).

In turn, Melendez and the court of appeals misconstrue Kings Aire's policies to argue that Melendez was disadvantaged by the FMLA designation, which purportedly decreased the amount of allowable leave from "indefinite" to a twelve-week maximum.  416 S.W.3d at 910.  But the first paragraph of Kings Aire's leave policy states that "[e]xcept as discussed below or required by law, a leave generally may not exceed three months, and an employee who fails to return to work within three months of the leave of absence will be terminated."  Contrary to Melendez's assertion, the policy simply does not allow employees to take "indefinite" unpaid leave for any reason.  And again, even leaving aside the three-month cap, Kings Aire's policies confirm that employees on FMLA leave have significantly more job protection than those on other types of unpaid leave.  We fail to

---

[10] The alleged misrepresentation in that letter is not as clear as Melendez suggests.  The letter stated that the accompanying FMLA information was being provided "in reference to your request for leave."  It did not state that Melendez had specifically requested FMLA leave.

15

see how a jury could reasonably infer from Kings Aire's designating Melendez's leave as FMLA leave that the company had terminated Melendez's employment or otherwise retaliated against him.

In sum, the trial evidence showed that Kings Aire terminated Melendez pursuant to uniform enforcement of a reasonable leave policy. Melendez presented no evidence to support his assertions that the policy was not uniformly enforced, that his termination was not required by such uniform enforcement, or that Kings Aire's stated reason for discharging him was false. Accordingly, legally insufficient evidence supports the jury's finding that Kings Aire terminated Melendez because he filed a workers' compensation claim in good faith.[11]

## IV. Conclusion

Having thoroughly reviewed the record, we hold that no evidence supports the jury's verdict on Melendez's retaliation claim. We reverse the court of appeals' judgment and render a take-nothing judgment in favor of Kings Aire on that claim.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** December 4, 2015

---

[11] The court of appeals noted that Kings Aire's policies incentivize employees not to report injuries by allowing them to take accrued vacation leave—which is paid leave—in lieu of workers' compensation leave. 416 S.W.3d at 910. Even assuming that this could constitute circumstantial evidence of retaliatory motive, such evidence is immaterial when an employee is terminated pursuant to the uniform enforcement of a reasonable absentee policy. *Haggar Clothing*, 164 S.W.3d at 388. Further, no evidence indicates that Melendez was discouraged from filing a compensation claim. To the contrary, as noted, Kings Aire assisted Melendez with the paperwork and initiated the claim's filing.

16