

IN THE
TENTH COURT OF APPEALS

———————

No. 10-18-00383-CV

FLORIDA METAL PRODUCTS, INC.
AND FLAMCO OF TEXAS, INC.,

                                                              Appellants

 v.

DANNY KREDER,

                                                              Appellee

———————

**From the 170th District Court
McLennan County, Texas
Trial Court No. 2018-2088-4**

## MEMORANDUM OPINION

Appellee, Danny Kreder, sued appellants, Florida Metal Products, Inc. and FLAMCO of Texas, Inc., for workers'-compensation retaliation. Appellants filed a motion to dismiss the lawsuit under the Texas Citizens Participation Act ("TCPA"). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001-.010. After a hearing, the trial court denied the motion to dismiss. Because we conclude that the trial court erred in denying the

motion to dismiss, we reverse the trial court's order and remand this appeal for further proceedings consistent with this opinion.

## I.    BACKGROUND

In his original petition, Kreder recounted that he worked for appellants for four years in maintenance in Waco, Texas. On November 7, 2017, Kreder injured his back at work and subsequently filed a workers'-compensation claim for this injury. Kreder alleged that he received medical care and continued to work for appellants under light-duty restrictions imposed by his treating physician. On November 28, 2017, Kreder's physician released him to return to full or regular-duty work without restrictions. When he returned to full or regular-duty work without restrictions, appellants terminated Kreder's employment.

Kreder filed suit alleging claims for violations of the Texas Labor Code. *See* TEX. LABOR CODE ANN. § 451.001 (noting that a person may not discharge or in any other manner discriminate against an employee who has filed a workers' compensation claim in good faith). Specifically, Kreder claimed that his employment was terminated because he filed a worker's-compensation claim and that appellants attempted "to justify this wrongful termination" by falsely telling him "that he was being terminated because of a mistake he made in tightening a wire weeks or months before and for which he had not been written up or received any reprimand/counseling." Kreder requested damages for

lost past and future wages and benefits of employment, as well as exemplary damages, in an amount greater than $200,000 but less than $1,000,000.

Appellants filed an original answer generally denying all the allegations made in Kreder's original petition and asserting that Kreder was terminated for a legitimate, non-discriminatory reason: poor job performance. Later, appellants filed a motion to dismiss under the TCPA. In their motion to dismiss, appellants contended that Kreder's claims are predicated on an allegation that appellants communicated a false reason for his termination and, thus, implicates appellants' exercise of the right of free speech. Additionally, appellants contended that Kreder's claims "necessarily implicate[] a host of communications by and among FLAMCO representatives in furtherance of their joint interests. These communications constitute 'association' for purposes of the TCPA." Appellants further alleged that Kreder cannot meet his burden of establishing a prima-facie case on every element of his claims with clear and specific evidence and that Kreder cannot overcome appellants' defense that Kreder was terminated for a legitimate, non-discriminatory reason. Accordingly, appellants requested that Kreder's claims be dismissed and that attorney's fees, costs, and sanctions be granted in their favor. Kreder filed a lengthy response to appellants' TCPA motion to dismiss, as well as an amended original petition.

The trial court conducted a hearing on appellants' TCPA motion to dismiss. At the conclusion of the hearing, the trial court took appellants' TCPA motion to dismiss

under advisement.  Thereafter, the trial court signed an order denying the motion to dismiss.  This accelerated, interlocutory appeal followed.

## II.  THE TCPA[1]

The TCPA protects citizens who associate, petition, and speak on matters of public concern from legal actions that seek to intimidate or silence them. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 13 (Tex. 2018); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015). That protection comes in the form of a special motion to dismiss, subject to expedited review, for any suit that appears to stifle a defendant's exercise of those rights.  *Youngkin*, 546 S.W.3d at 679; *Lipsky*, 460 S.W.3d at 584.  The TCPA casts a wide net and is to be construed liberally to fully effectuate its purpose and intent.  *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) [(per curiam)].  In determining whether a plaintiff's legal action should be dismissed, the TCPA requires the trial court to consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.  TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a) (West 2014); *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 892 (Tex. 2018).

Entitlement to a TCPA motion to dismiss requires the completion of a two-, and possibly three-, step process.  *See Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 691 (Tex. 2018).  Under the first step, the burden is on the movant, typically a defendant, to show "by a preponderance of the evidence" that the legal action by the non-movant, typically a plaintiff, "is based on, relates to, or is in response to" the defendant's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b) (West 2014); *see Lipsky*, 460 S.W.3d 586-87.  The statute defines what it means to exercise those rights, and courts must adhere to these supplied legislative definitions.  *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).  A preponderance of the evidence

---

[1] We note that Kreder filed his original petition on June 8, 2018, and appellants filed their TCPA motion to dismiss on August 15, 2018.  Since then, the Legislature has amended the TCPA.  The law, as stated in this opinion, is the version of the TCPA as it applied when Kreder filed his original petition and appellants filed their TCPA motion to dismiss.

means that the evidence presented is more likely than not true. *See Lipsky*, 460 S.W.3d at 589; *In the Interest of C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

If a defendant is able to demonstrate that a plaintiff's legal action implicates one of these rights, the second step shifts the burden to the plaintiff to establish by "clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) (West 2014); *see In re Lipsky*, 460 S.W.3d at 587. Although the statute does not define "clear and specific," "clear" means unambiguous, sure, or free from doubt, and "specific" means explicit or relating to a particular named thing. *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 2018 Tex. LEXIS 1312, at *8 (Tex. 2018) (internal quotes omitted); *In re Lipsky*, 460 S.W.3d at 590. "Prima facie case" as used in the statute means a "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* Direct evidence of damages is not required, but the evidence must be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct. *S&S Emergency Training Sols.*, 564 S.W.3d 843 at *8.

If the plaintiff satisfies that requirement, the burden shifts back, in step three, to the defendant to prove each essential element of any valid defenses by a preponderance of the evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d) (West 2014); *Youngkin v. Hines*, 546 S.W.3d 675, 679-80 (Tex. 2018).

On appeal, our review of the trial court's ruling on a TCPA motion to dismiss is de novo. *See Holcomb v. Waller Cty.*, 546 S.W.3d 833, 839 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Tervita, LLC v. Sutterfield*, 482 S.W.3d 280, 282 (Tex. App.—Dallas 2015, pet. denied); *Johnson-Todd v. Morgan*, 480 S.W.3d 605, 609 (Tex. App.—Beaumont 2015, pet. denied). *See also Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

*Arey v. Shipman Agency, Inc.*, No. 10-18-00100-CV, 2019 Tex. App. LEXIS 3513, at **1-3

(Tex. App.—Waco May 1, 2019, pet. denied) (mem. op.).

## A.    Step One

In the first step, we must determine whether Kreder's lawsuit was based on, related to, or in response to appellants' exercise of their right of free speech, right to petition, or right of association.  In conducting our de novo review of this step, we consider the pleadings, and supporting and opposing affidavits stating the facts on which the liability or defense is based, as the trial court was required to consider.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a); *Adams*, 547 S.W.3d at 892; *Johnson-Todd*, 480 S.W.3d at 609.  When it is clear from the plaintiff's pleadings that the action is covered by the TCPA, the defendant need show no more.  *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

With regard to the phrase "based on, relates, to, or is in response to," we consider whether there is a nexus between the "legal action" and the protected conduct under the TCPA.  *See Grant v. Pivot Tech. Solutions, Inc.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. denied).  The level of nexus required, which "includes no qualifications as to its limits," is very broad.  *Id.* at 880 (quoting *Cavin v. Abbott*, 545 S.W.3d 47, 63 (Tex. App.—Austin 2017, no pet.); *see Coleman*, 512 S.W.3d at 901.  "[A] plaintiff's claims are 'related' to a protected communication when there is 'some sort of connection, reference, or relationship between them,' and are 'in response to' a protected communication when they 'react[] to or [are] asserted subsequently' to the communication."  *Grant*, 556 S.W.3d at 880 (quoting *Cavin*, 545 S.W.3d at 69).

A broad range of communications, in various mediums, are covered by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1) (defining "communication" to include the "making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic"); *see also Adams*, 547 S.W.3d at 894 (recognizing that, under the TCPA, "[a]lmost every imaginable form of communication, in any medium, is covered"). Furthermore, the Texas Supreme Court has also recognized that private communications are covered by the TCPA, provided that they were made in connection with a matter of "public concern." *See Coleman*, 512 S.W.3d at 901; *see also Lippincott*, 462 S.W.3d at 509 (noting that the "plain language of the statute imposes no requirement that the form of the communication be public").

In the instant case, it is undisputed that Kreder filed a legal action for workers'-compensation retaliation against appellants. From the face of Kreder's live petition, we conclude that Kreder's claims for violations of the Texas Labor Code are "based on, relate[d] to, or [are] in response to" appellant's "exercise of the right of free speech." This is because Kreder's claims are factually predicated on his allegation that appellants "[i]n an attempt to justify this wrongful termination[,] Defendants falsely told Kreder that he was being terminated because of a mistake he made in tightening a wire weeks or months before and for which he had not been written up or received any reprimand/counseling." Additionally, Kreder asserts that his "superior, after receiving information regarding [Kreder's] injury and work restrictions[,] derogatorily referred to [Kreder] as 'a

vegetable.'"  This language, which Kreder uses to illustrate that he was retaliated against,

demonstrates that statements were made with regard to Kreder's job performance and

his future employment status with the company and, thus, satisfies the broad meaning

of "communication."  *See Youngkin*, 546 S.W.3d at 680.

However, despite the foregoing, we must determine whether the communication

involved a matter of public concern because the communications were private.  *See*

*Coleman*, 512 S.W.3d at 901; *see also Lippincott*, 462 S.W.3d at 509.  As stated in *Coleman*,

> [t]he TCPA does not require that the statements specifically 'mention' health, safety, environmental, or economic concerns, nor does it require more than a 'tangential relationship' to the same; rather TCPA applicability requires only that the defendant's statements are 'in connection with' issue[s] related to' health, safety, environmental, economic, and other identified matters of public concerns chosen by the Legislature.

512 S.W.3d at 900 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3), (7)).

Pete Alderman, the general manager of FLAMCO, stated in his affidavit attached

to appellants' TCPA motion to dismiss that,

> [f]or both safety and economic reasons, it is important that members of the maintenance department, including Kreder, perform their job responsibilities correctly.  A failure to do so prevents FLAMCO from producing high-quality products without unnecessary waste of materials or delays in production time, and negatively impacts the safe working environment that FLAMCO strives to maintain.

Alderman further outlined performance problems that Kreder had since early 2015 that

resulted in complaints from co-workers and additional costs to the company to replace

or repair damaged equipment caused by Kreder's alleged failure to do his job properly.

As a result of this, Alderman recounted that he "began having serious discussions about Kreder's performance problems" with management beginning in July 2016, and continuing through November 2017. In these discussions, management "considered these important issues and expressed our concerns about them, including workplace safety concerns and the negative financial implications caused by Kreder's poor performance." Appellants also provided the affidavits of Kevin Greenawalt, Head of Maintenance at FLAMCO, and Jerry Marecle, Plant Manager of FLAMCO, who echoed the sentiments of Alderman that Kreder's alleged poor work performance negatively impacted workplace safety and the finances of the company.

Based on the foregoing, we conclude that evidence before the trial court at the time of the ruling on the TCPA motion to dismiss established that the alleged communications that serve as the basis for Kreder's claims were based on related to, or were in response to appellants' exercise of the right of free speech because, as shown by the affidavits of Alderman, Greenawalt, and Marecle, the private communications were in connection with a matter of public concern—workplace safety and the economic health of the company.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001(3) (noting that the "exercise

---

[2] We recognize that the Texas Supreme Court has recently cautioned against an overly-broad application of the TCPA and noted that "[a] private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 137 (Tex. 2019). However, as noted above, appellants have asserted that Kreder's actions not only affected the finances of the company, but also impacted workplace safety, which falls within the health and safety provisions of section 27.001(7)(E). *See id.* at 136 ("We previously held that private communications are sometimes covered by the TCPA. . . . These prior cases involved environmental, health, or safety concerns that had public

of the right of free speech" means a communication made in connection with a matter of public concern), 27.001(7)(E) (stating that "a matter of public concern" includes an issue related to a good, product, or service in the marketplace).[3] We therefore hold that the first step is met. *See Hersh*, 526 S.W.3d at 467 (noting that when it is clear from the plaintiff's pleadings that the action is covered by the TCPA, the defendant need show no more). We now proceed to the second step in our analysis.

**B.** **Step Two**

In the second step, the burden shifts to Kreder to establish, by clear and specific evidence, a prima facie case for each element of the claims alleged in the petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see also In re Lipsky*, 460 S.W.3d at 587. Clear and specific evidence includes relevant circumstantial evidence and rational inferences that may be drawn therefrom. *In re Lipsky*, 460 SW.3d at 584, 591.

---

relevance beyond the pecuniary interests of the private parties involved." (internal citations omitted)). Moreover, there is more than a "de minimus reference" to those safety concerns in this record, especially in the affidavits of Marecle and Greenawalt. *See id.* at 136 n.7.

    [3] One amendment to the TCPA since the 2019 legislative session is to the definition of "[m]atter of public concern." Though not applicable to this case, the latest version of the TCPA now defines "[m]atter of public concern" as,

> a statement or activity regarding:
>
>     (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;
>
>     (B) a matter of political, social, or other interest to the community; or
>
>     (C) a subject of concern to the public.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(A)-(C).

Here, Kreder sued appellants for workers'-compensation retaliation. Under the Texas Workers' Compensation Act, an employer "may not discharge or in any other manner discriminate against an employee because the employee has . . . filed a workers' compensation claim in good faith." TEX. LABOR CODE ANN. § 451.001(1); *Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 312 (Tex. 2015). "An employer who violates this statute is subject to a retaliation claim, which constitutes 'an exception to the traditional doctrine of employment at will found in Texas law.'" *Melendez*, 477 S.W.3d at 312 (quoting *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996) (internal quotations omitted)).

The elements of a claim for workers'-compensation retaliation under section 451.001 of the Labor Code are: (1) an employee, (2) is discharged or discriminated against in any manner, (3) because the employee has filed a workers' compensation claim in good faith, and (4) that "but for" the employee's filing of a workers' compensation claim, the discharge would not have occurred when it did. *Willis v. Nucor Corp.*, 282 S.W.3d 536, 543 (Tex. App.—Waco 2008, no pet.) (citations omitted). The employee has the burden of proof for a claim under section 451.001. *See* TEX. LABOR CODE ANN. § 451.002(b).

> The last element is known as the "causal connection" or "causal link," and the employee has the burden to establish a causal link between the discharge and the filing of the workers' compensation claim. This link may be established by direct or circumstantial evidence. Examples of circumstantial evidence sufficient to establish a causal link include: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. These

five examples are not necessary elements of the cause of action. The workers' compensation claim also need not be the sole cause of the termination.

Once a link between the filing and the discharge is established, it is the employer's burden to rebut the alleged retaliation by showing there was a legitimate reason for the discharge. Thereafter, the burden shifts back to the employee to produce controverting evidence of a retaliatory motive. The retaliatory motive may also be established by either direct or circumstantial evidence using the *Continental Coffee* examples. The employee's subjective beliefs are, however, no more than conclusions.

*Alayon v. Delta Air Lines, Inc.*, 59 S.W.3d 283, 287-88 (Tex. App.—Waco 2001, pet. denied) (per curiam) (internal citations omitted).

On appeal, appellants challenge the first and fourth elements of Kreder's claims for workers'-compensation retaliation. Specifically, appellants contend that Kreder has not presented sufficient evidence to show that Kreder was an employee of Florida Metal Products; thus, Florida Metal Products was not a properly-joined defendant. Appellants also argue that Kreder has not established, with clear and specific evidence, the "causal link" or retaliatory motive.

### 1. Kreder's Employment Status with Florida Metal Products

Kreder pled a "workers' compensation retaliation" claim against both Florida Metal Products and FLAMCO. In its TCPA motion to dismiss, appellants challenged Kreder's contention that he was an employee of both Florida Metal Products and FLAMCO. A review of the record demonstrates that Kreder cannot establish that he was an employee of Florida Metal Products.

"For the purpose of workers' compensation law, the employer-employee relationship may be created *only* by a contract." *Waldrep v. Tex. Emp'rs Ins. Ass'n*, 21 S.W.3d 692, 698 (Tex. App.—Austin 2000, pet. denied). Under section 401.011(18) of the Texas Labor Code, an "employer" is "a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage." Tᴇx. Lᴀʙᴏʀ Cᴏᴅᴇ Aɴɴ. § 401.011(18). Additionally, an "employee" is a "person in the service of another under a contract of hire, whether express or implied, or oral or written," excluding any "person whose employment is not in the usual course and scope of the employer's business." *Id.* § 401.012(a)(c)(2).

In determining whether an entity is an employer under this portion of the Texas Labor Code, the Texas Supreme Court has stated that courts should "consider traditional indicia," *see Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 477 (Tex. 2005), which include "(1) the right to hire and discharge the worker, (2) the carrying of the worker on social security and income tax withholding records, (3) the providing of equipment, (4) the responsibility to pay wages, and (5) the right to control the specifics of a worker's performance." *Waldrep*, 21 S.W.3d at 700 n.13. Regarding the exercise of control, the relevant factors include whether: (1) the worker was on the client company's premises at the time of the injury; (2) the work was in furtherance of the client company's day-to-day business; and (3) the details of the work were specifically directed by the client company. *Garza*, 161 S.W.3d at 477.

None of the indicia listed above are established between Kreder and Florida Metal Products. Specifically, Marecle opined in his affidavit that he was the decision-maker regarding Kreder's termination. In fact, Marecle noted that: "I personally hired [Kreder] and fired him." Additionally, Florida Metal Products's Chief Financial Officer, John Klarfeld, noted that he expressly left the termination decision to FLAMCO's discretion.

The record also reflects that Kreder's W2s exclusively identified FLAMCO as his employer for tax purposes. Moreover, there is no evidence that Florida Metal Products provided Kreder any equipment, and the record demonstrates that FLAMCO had sole discretion over setting and paying Kreder's wages. Furthermore, the record shows that Kreder worked only in FLAMCO's Waco plant, not at Florida Metal Products's Jacksonville, Florida, office. Kreder's work was in furtherance of FLAMCO's business objectives and was directed and supervised by FLAMCO employees. In addition to the foregoing, Kreder's medical documents, as they pertain to his workers'-compensation claim, identify FLAMCO, not Florida Metal Products, as Kreder's employer, and all of FLAMCO's witnesses confirmed that FLAMCO was Kreder's only employer.

Based on this record, we cannot conclude that Kreders met his burden to establish by clear and specific evidence that Florida Metal Products was his employer under the Texas Labor Code. *See* TEX. LABOR CODE ANN. §§ 401.011(18), 401.012(a)(c)(2); *see also Garza*, 161 S.W.3d at 477; *Waldrep*, 21 S.W.3d at 698, 700 n.13. As such, the TCPA mandates that Kreder's claim against Florida Metal Products be dismissed. *See Holcomb*, 546 S.W.3d

at 839; *Tervita, LLC*, 482 S.W.3d at 282; *Johnson-Todd*, 480 S.W.3d at 609; *see also Arey*, 2019 Tex. App. LEXIS 3513, at *3.

## 2. Knowledge of Compensation Claim by Those Making the Decision on Termination

As noted above, Marecle indicated that he was the decision-maker regarding Kreder's termination. In his deposition testimony, Marecle recounted that he noticed that Kreder's job performance began to decline in mid- to late- 2016; that Marecle received several complaints from employees about Kreder's performance; that Kreder did not receive a wage increase at any point after August 2016; and that Marecle began speaking with his manager, Alderman, about terminating Kreder's employment in mid-2016—well before the workplace injury that gave rise to the workers'-compensation claim.

In his affidavit, Marecle further averred that:

> After several months, Kreder's performance did not improve. Alderman made clear to me that he believed Kreder should be terminated[,] but I continued to give Kreder opportunities for improvement. Ultimately[,] I decided by the end of October 2017 that I was going to terminate Kreder's employment as a result of his poor performance. . . . After I made this decision but before I had the opportunity to call Kreder in for a meeting about it, he hurt his back.

Marecle also noted that the:

> decision to terminate Kreder had absolutely nothing to do with his minor back injury, which was fully healed at the time of his termination. It also had nothing to do with Kreder filing a workers' compensation claim, which I do not believe I was even aware of at the time. I do not remember exactly when I learned that Kreder filed such a claim, but this played no role in my decision to terminate him.

In any event, Kreder contends that the following evidence shows knowledge of his workers'-compensation claim: (1) Carl Armour, his direct supervisor, knew Kreder was injured and sought medical attention and generally knew FLAMCO provided workers'-compensation coverage to its employees; and (2) Alderman and Administrator Donna Moreno knew Kreder had work restrictions and received a copy of Workers' Compensation Status Report. Even if these allegations were true, they do not establish the knowledge of Marecle, who opined that he was the sole decision-maker in the termination of Kreder.

Kreder also points to statements made by Klarfeld, Florida Metal Products's Chief Financial Officer, who oversaw workers'-compensation claims for Florida Metal Products. However, Klarfeld repeatedly testified that he did not have any involvement in the decision to terminate Kreder.

As stated by the First Court of Appeals, "knowledge that [an employee] had been injured on the job is not the same as knowledge that he was pursuing a workers' compensation claim." *Cardenas v. Bilfinger TEPSCO, Inc.*, 527 S.W.3d 391, 400 (Tex. App.—Houston [1st Dist.] 2017, no pet.). The fact that Marecle knew that Kreder was injured on the job is not enough to establish that Marcele knew, as the sole decision-maker in the termination of Kreder's employment, that Kreder had filed a workers'-compensation claim. Furthermore, communications between individuals who were not involved in the termination of Kreder's employment regarding Kreder's employment is

not enough to establish this factor.  Because there is not clear and specific evidence that Marecle knew of Kreder's workers' compensation claim at the time he terminated Kreder, we cannot say that this factor weighs in favor of establishing the required "causal link."

### 3. Expression of a Negative Attitude Toward the Employee's Injured Condition

To show appellants expressed a negative attitude toward his injured condition, Kreder relies heavily on the following sarcastic comments made by Klarfeld in an email: "This looks like it's going to be an issue. . . . Basically looks like to me he is a vegetable."[4] However, as stated above, Klarfeld did not have any involvement in the decision to terminate Kreder, and Klarfeld had no supervisory role over Kreder.  That decision and supervisory status belonged to Marecle, and Kreder has not presented any evidence showing that Marecle expressed any negative atittudes towards Kreder's injury.

Nevertheless, even if we were to assume that Klarfeld's statements constitute a negative attitude toward Kreder's injured condition, Texas courts have held that stray remarks made in the workplace by non-decision makers, without more, are not evidence of the employer's intent.  *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 816 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *see M.D. Anderson Hosp. & Tumor Inst. v.*

---

[4] A copy of Klarfeld's email was included in Kreder's response to appellants' TCPA motion to dismiss.  The email was directed to Donna Moreno, office manager for FLAMCO.  Pete Alderman was also copied on the email.  The email provided the following, in its entirety:

> I need a written report for all of this to file with the insurance company.  This looks like it's going to be an issue.  I want to know exactly what he is or will be doing to determine if it fits the required restrictions.  Basically looks like to me he is a vegetable.

*Willrich*, 28 S.W.3d 22, 25 (Tex. 2000) (per curiam) ("Stray remarks, remote in time from [the plaintiff's] termination, and not made by anyone directly connected with the [employment] decisions, are not enough to raise a fact question about whether [the defendant's] reason for terminating [the plaintiff] was pretextual."); *see also Jones v. NRG Tex., LLC*, No. 10-16-00260-CV, 2017 Tex. App. LEXIS 3717, at *8 (Tex. App.—Waco Apr. 26, 2017, no pet.) (mem. op.) ("Stray remarks by people not involved in the termination decision are generally insufficient to show discrimination." (internal citations omitted)).

Moreover, we are also not persuaded by Kreder's reliance on *Grey Wolf Drilling Co. v. Perez* to show that the Klarfeld email is enough to show a negative attitude toward Kreder so as to prove retaliatory intent. *See generally* 04-02-00802-CV, 2004 Tex. App. LEXIS 2011 (Tex. App.—San Antonio Mar. 3, 2004, pet. denied) (mem. op.). In *Grey Wolf Drilling Co.*, there was evidence that the plaintiff's co-workers and supervisors "constantly 'harassed'" him and subjected him to negative treatment after he filed a workers'-compensation claim and returned to work. *Id.* at **1-2. Apparently, after plaintiff filed his workers'-compensation claim, one of the plaintiff's co-workers "frequently called him 'handicapped' and a 'vegetable' and told him that he was 'injured' and 'ain't worth shit.'" *Id.* at *6. When the plaintiff's supervisor was made aware of the comments, he laughed and refused to reprimand the co-worker for his actions. *Id.* at **6-7. The San Antonio Court of Appeals concluded that this was some evidence of a negative attitude expressed toward the plaintiff's injury. *Id.* at *7.

In the instant case, Klarfeld's comment was isolated and not directed or shown to Kreder or shared with Marecle, the individual who was the sole decision maker regarding Kreder's employment. And as mentioned before, Klarfeld was not involved in the decision to terminate Kreder, nor was he Kreder's supervisor. Additionally, evidence in the record demonstrated that those in contact with Kreder were positive toward him regarding his injury and that, during his period of light duty, Kreder was paid his full wages and the company did not take any adverse action against him. Accordingly, we cannot say that this factor weighs in favor of establishing the required "causal link."

### 4. Failure to Adhere to Established Company Policies

In attempting to establish this factor, Kreder argues that FLAMCO's own employee handbook demonstrates that the company failed to follow the progressive-discipline policy prior to terminating his employment. Specifically, Kreder emphasizes that he was never disciplined in the four years that he worked in the maintenance department and that his personnel file shows regular pay raises for good performance.

First, we reiterate what was mentioned above—that Kreder did not receive another pay raise after August 2016, which was when Marecle began discussing Kreder's alleged poor work performance and his possible termination. Second, a review of the FLAMCO employee handbook does not support Kreder's contention here. Regarding discipline, the following language in the FLAMCO employee handbook allows for progressive discipline or immediate discharge:

The objective of discipline is to provide an effective means for enforcing reasonable company rules and policies. The Company recognizes, however, that each disciplinary and termination situation represents a unique set of circumstances and therefore must be reviewed and decided based on the individual facts and in the context of surrounding circumstances.

Progressive discipline may be administered for employee counseling sessions and/or warnings designed to remedy employee problems. If the problem is not remedied, the employee moves to the next step of progressive discipline and continues in this process until either the problem is remedied or termination results. *Progressive discipline is discretionary and the employer retains the right to discharge employees immediately.*

. . .

*Disciplinary actions may range from verbal warnings, written warnings, suspensions, and in severe cases, immediate discharge.*

(Emphasis added). Furthermore, both Marecle and Klarfeld confirmed that FLAMCO's disciplinary policy was administered on a discretionary basis.

In addition to the foregoing, the FLAMCO employee handbook also provided a non-exhaustive list of reasons that "[e]mployees may be terminated immediately," including:

- "Use of 'Company time' for excessive personal business that impedes production";

- "Any act detrimental to the interests of the Company or its employees";

- "Any misconduct or disruption that detracts from the cooperative, harmonious teamwork environment that our Company strives to promote";

- "Disregard of safety rules, common safety practices and sanitary conditions";

- "Consistently poor performance";

- "Smoking (except in designated areas)";

- "A slow-down, interference or delay of work or the work of other employees which impedes production";

Each of these potential reasons for immediate termination applied to Kreder, as asserted by appellants.

Furthermore, as shown above, the FLAMCO employee handbook did not require the company to give Kreder formal reprimands or follow a progressive disciplinary procedure. Rather, the company retained the right to discharge Kreder immediately, especially if one or more of the laundry list of items mentioned above were applicable.

Appellants presented evidence that, on numerous occasions, Kreder failed to properly maintain or repair machines, which caused safety and production issues at the company.[5] Additionally, appellants also showed that Kreder frequently disappeared while at work, only to eventually be found smoking or napping. Kreder has not directed

---

[5] In their affidavits, Greenawalt and Marecle both described numerous mistakes made by Kreder that impacted workplace safety and cost the company money to correct. Greenawalt, in particular, noted that he "told Kreder multiple times that his work was slipping and that he would likely be fired if he did not step it up. . . . I told him that not a single operator on the plant wanted Kreder working on their equipment as a result of his repeated performance errors. In response, he just laughed." Greenawalt also recounted that he had verbally disciplined Kreder before and also wrote him up for failing to "change out the rubber pad (the diaphragm) on the air valve" and lying about it. Greenawalt gave the report to Charlene Ramirez to put in Kreder's employment file. However, Greenawalt is "unable to locate that report. Kreder had access to the cabinet where employment files were stored. I do not know if he removed the copy of the report from his file."

us to any evidence that required FLAMCO to follow a progressive-disciplinary procedure and prohibited the company from terminating him without any formal reprimands or warnings.  As such, we cannot conclude that this factor weighs in favor finding that the company's alleged failure to adhere to its own policies demonstrated a retaliatory motive and, thus, established the "causal link."  *See Willis*, 282 S.W.3d 551-53 (holding that the plaintiff failed to satisfy this factor given affidavits from corporate executives confirming that plaintiff's termination was conducted consistent with company policy, especially because the policy afforded the employer discretion to consider individual circumstances in deciding whether to termination employment and flexibility in how to implement the policy); *see also Clevinger v. Fluor Daniel Servs. Corp.*, No. 10-11-00288-CV, 2012 Tex. App. LEXIS 3128, at *13 (Tex. App.—Waco Apr. 18, 2012, no pet.) (mem. op.) ("That there were no official written criteria used nor a written ranking of the employees placed on the list is no evidence that Fluor did not follow its company policies.").

   **5.      Discriminatory Treatment in Comparison to Similarly-Situated Employees**

The Texas Supreme Court has stated that "[e]mployees are similarly situated if their circumstances are comparable in all material respects."  *Yselta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam).  Employees may be considered similarly situated "if their circumstances are comparable in all material respects, including similar standards, supervisors[,] and conduct."  *Rosenberg v. KIPP, Inc.*, 458

S.W.3d 171, 177 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (internal quotation omitted). To establish that employees are "comparable in all material respects," a plaintiff also must show "that there were no differentiating or mitigating circumstances as would distinguish the employer's treatment of them." *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 435 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (internal quotation omitted).

To meet the standards above, Kreder needed to present evidence of another FLAMCO employee who was in the maintenance department, who was supervised by Marecle and Armour, who allegedly failed to repair equipment correctly and went missing during working hours on numerous occasions, yet did not file a workers'-compensation claim and was not fired. Kreder has not directed us to any evidence in the record of such an individual.

Instead, Kreder argued that he received no negative "points" under FLAMCO's progressive-discipline policy, but was terminated. However, other employees accumulated points, but were not terminated. This argument fails because, as Carl Armour testified, the point system applied only to absences and unexcused tardiness when showing up for work—both issues that did not apply to Kreder. Indeed, performance evaluations included in the record show that Kreder was commended for his attendance and punctuality. Rather, as explained above, appellants indicated that

Kreder was terminated for poor performance. Therefore, based on the foregoing, we cannot say that this factor weighs in favor of establishing the required "causal link."

### 6. Evidence that the Stated Reason for the Discharge was False

To establish this factor, Kreder argued in the trial court that appellants' explanations for his termination were "shifting, changing, or inconsistent." Kreder also relies heavily on the timing of his return to full work duty after his injury and his termination. First, as highlighted above, in their pleadings, appellants have consistently asserted that Kreder was terminated for poor performance. In their affidavits, Marecle and Greenawalt outlined several instances where Kreder failed to perform or complete his maintenance tasks correctly, which created workplace safety issues and were costly to the company. Additional evidence showed that Kreder frequently disappeared from his normal shift hours, only to be found smoking or napping. Marecle averred that he began speaking with his manager about Kreder's poor performance in August 2016, approximately a year before Kreder was terminated. Furthermore, the evidence shows that appellants intended to terminate Kreder's employment prior to his injury, but the injury halted this process.

Furthermore, the timing of Kreder's termination does not, by itself, establish this factor. Texas courts have addressed similar circumstances and routinely concluded that a short time between the filing of a workers'-compensation claim and termination did not establish causation where other factors weighed against it. *See Cardenas*, 527 S.W.3d at

402 (noting that temporal proximity between making a workers'-compensation claim and termination may be circumstantial evidence of a retaliatory motive, but concluding that one day between filing the claim and termination did not establish causation where other factors weighed against it); *Willis*, 282 S.W.3d at 546 ("Nor is the temporal proximity of filing a claim and an employee's discharge alone sufficient to raise a genuine issue of material fact."); *Clevinger*, 2012 Tex. App. LEXIS 3128, at *9 ("It appears from the summary judgment record that there is no dispute that a short period of time elapsed between Clevinger's injury and his termination. However, the temporal proximity of filing a claim and an employee's termination alone is insufficient to establish a causal link."). Accordingly, because other factors weigh against establishing a causal link, the temporal proximity between Kreder's filing of his workers'-compensation claim and his termination is not enough.

### 7. Summary

As demonstrated above, Kreder has not presented clear and specific evidence to establish a causal link between his filing of his workers'-compensation claim and his termination. Kreder's own speculation based on Klarfeld's email statement, as well as the timing of his termination, is not enough to establish this causal link. *See Willis*, 282 S.W.3d at 544 (noting that an employee's subjective belief that an employer acted in retaliation for the filing of a workers'-compensation claim has no probative force because such beliefs are "no more than conclusions"). As such, we cannot say that Kreder

established, by clear and specific evidence, all the essential elements of his workers'-compensation-retaliation claim.  *See* TEX. LABOR CODE ANN. §§ 451.001-.002(b); TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see also In re Lipsky*, 460 S.W.3d at 587.  And given this, we conclude that the trial court erred by failing to dismiss Kreder's claims under the TCPA.  *See Holcomb*, 546 S.W.3d at 839; *Tervita, LLC*, 482 S.W.3d at 282; *Johnson-Todd*, 480 S.W.3d at 609; *see also Arey*, 2019 Tex. App. LEXIS 3513, at *3.  We sustain appellants' sole issue on appeal.

### III.    CONCLUSION

We reverse the trial court's order denying appellants' TCPA motion to dismiss and remand this case to the trial court with an instruction to grant appellants' motion to dismiss under the TCPA as to both Florida Metal Products and FLAMCO and to determine the amount of court costs, reasonable attorney's fees, and other expenses that justice and equity require be awarded to appellants and the amount of sanctions sufficient to deter Kreder from bringing similar actions in the future.

JOHN E. NEILL
Justice

Before Chief Justice Gray
      Justice Davis, and
      Justice Neill
(Chief Justice Gray dissents with a note)*
Reversed and remanded
Opinion delivered and filed October 14, 2020
[CV06]

*(Chief Justice Gray dissents.  A separate opinion will not issue.  Chief Justice Gray notes, however, that the suit is based on the action of FLAMCO in terminating Kreder, not on statements made by its employees.  Mere reference in the petition to a statement made by the defendant does not make the suit about that statement.  The statements made that are referenced in Kreder's petition may be evidence of motive, or not, or allow for the inference of motive, or not, but they are not the basis of Kreder's claim.  As such, the TCPA does not apply to Kreder's suit and the trial court did not err in denying the motion to dismiss on the basis of the TCPA.  Kreder may not be able to survive a motion for summary judgment based on the lack of a causal connection as laid out in detail in the Court's opinion, but that is not the procedural posture in which this case is presented.  Chief Justice Gray would affirm the trial court's order denying the motion to dismiss on the basis of the TCPA, and because the Court's does not, he respectfully dissents.)

