

# NUMBER 13-21-00162-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

BROWNSVILLE INDEPENDENT
SCHOOL DISTRICT,                                                    Appellant,

v.

JASMIN LEAL                                                         Appellee.

---

### On appeal from the 357th District Court
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña**
**Memorandum Opinion by Justice Peña**

Appellant Brownsville Independent School District (BISD) appeals the denial of its

plea to the jurisdiction, seeking to dismiss appellee Jasmin[1] Leal's whistleblower claim.

---

[1] Appellee's name is shown as both "Jasmine" and "Jasmin" in the record. We will refer to her as

*See* TEX. GOV'T CODE ANN. §§ 554.001–.010. In two issues, which we treat as one, BISD argues that the trial court erred in denying its plea because the jurisdictional evidence does not establish a waiver of its governmental immunity. We affirm

## I. BACKGROUND FACTS[2]

### A. Underlying Incident

Leal was employed with BISD at Burns Elementary School as a Level 5 Secretary from 2014 until her termination on May 21, 2019. In her position, Leal was responsible for maintaining the school's accounting records, completing monthly bank statements and activity reports, issuing checks, receiving money and making receipts, making deposits into the school's bank account, and storing funds in a safe, locked vault.

On September 30, 2018, Burns Elementary teacher Elvira Granado prepared an email to the BISD Police Department. Granado relayed that on September 25, 2018, she tendered $2,700 in cash to Leal from a pre-kindergarten fundraiser. Granado signed a "Deposit Reconciliation Form" evidencing the transfer. The next day, on September 26, Granado requested a check from Leal to purchase items related to the fundraiser. On September 27, 2018, Leal contacted Granado and told her to go to the front office. Granado assumed that Leal was requesting a receipt for the items purchased the day before. When Granado went to deliver the receipt, Leal stated: "[O]h ok but I called you because I'm off $1[,]000." In other words, Leal had only $1,700 of the $2,700 which Granado had tendered to her. According to Granado, Leal stated that Burns Elementary

---

"Jasmin" as that is the spelling reflected in the final order being appealed.

[2] We derive the background facts from the jurisdictional record.

principal Alma Garza had something to do with the missing funds and that she would speak with Garza. Granados reported that the following occurred later that afternoon:

> [Leal] goes to my class and takes another Deposit Reconciliation Form with the amount of $1[,]700 and I told her no . . . the deposit that I made was $2[,]700 and she [said] "[J]ust sign it[.] I have to go deposit and the amount[s] don't match[.] Just sign hurry cuz [sic] I have to go deposit and besides Garza knows and we already know what to do." She said that [Garza] would cover the money missing.

Granado said she reluctantly signed the form. She later spoke with Garza, who informed Granado that the missing funds would be replaced by the school's concession stand monies. Granado stated it was "a very uncomfortable situation that I feel I was put in[.] I think that as soon as that money was gone [then] BISD police should [have] been called. Why is [this] being brushed under the carpet[?]"

## B.     The Investigations

The BISD Police Department received Granado's email on September 30, 2018, and Officer Patrick Gabbert was assigned the case. Officer Gabbert contacted Leal on October 2, 2018, and asked her to come to his office for questioning. Leal voluntarily attended the interview. When she arrived, Officer Gabbert read Leal her *Miranda* rights. Leal then signed a waiver of her rights and told Officer Gabbert that she received $2,700 in cash from Granado and then proceeded to lock the money in her filing cabinet. Leal stated that Garza went through her filing cabinets on previous occasions. Leal also admitted that she asked Granado to change the Deposit Reconciliation Form with Garza's knowledge and consent. When asked what she did with the original Deposit Reconciliation Form, Leal stated that she threw it away. According to Officer Gabbert's report, Leal also informed Officer Gabbert that "there had been other cases where money

3

was missing" and indicated that Garza "had handled the money [on] those occasions." According to Leal, she had previously reported Garza to BISD's Internal Audit Department. BISD Officer Robert Rodriguez investigated Leal's claims regarding Garza.

While the BISD police investigation was ongoing, the audit department conducted its own investigation regarding the missing funds. On December 14, 2018, the audit department submitted a report to the BISD school board and superintendent which stated that both Garza and Leal both "failed to comply with BISD policies and procedures to properly administer the fundraising activities at the campus." The report further deduced that Garza and Leal's mismanagement resulted in $34,176.13 in unaccounted-for funds. The report set forth:

> [Granado] submitted $2,700[] to [Leal], utilizing the Deposit Reconciliation Form and, after counting the funds, [Leal] issued receipt #045046 to [Granado] for said amount. Subsequently, and by her own admission, [Leal] changed the Deposit Reconciliation Form, showing an amount of $1,700[] and claimed that $1,000[] was the amount of missing funds. She also changed the copy of the original receipt #045046 showing the changed amount of $1,700[]. Additionally, by her own admission, [Leal] also forged [Granado's] initials and [Garza's] signature on the same receipt.

The audit department issued another report on March 8, 2019, detailing a pattern of shoddy recordkeeping, the forging of signatures, and missing funds.

The audit department then expanded the scope of its audit to prior years. On May 10, 2019, it issued an "Addendum to Mismanagement of Student Activity and Motivational Funds" report. This report concluded that the Burns Elementary campus had understated gross receipts and records regarding campus uniform inventory, resulting in a loss of $15,885.03 instead of an expected profit of $5,738 on the sale of school uniforms. The report further indicated that "[a] five[-]year cash trend revealed that cash balances had

4

decreased in the last four fiscal years, specifically in the two scoped fiscal years ending June 30, 2017 and 2018." The report concluded that both Leal and Garza both failed to comply with district policy regarding student fundraisers consecutively during the years at issue.

As a result of the actions described above, BISD terminated Leal's employment. On the same day, Leal filed an internal grievance claiming she was a "whistleblower" and that she was being retaliated against for reporting the theft of the $1,000 dollars in missing funds. *See* TEX. GOV'T CODE ANN. § 554.002.

## C.     The Lawsuit

Leal filed suit against BISD, alleging a whistleblower claim. BISD answered, asserting a general denial and raising affirmative defenses. BISD later filed a plea to the jurisdiction, contending that the trial court lacked subject matter jurisdiction because the audit department was not an appropriate law enforcement authority; and because Leal's report to BISD police was not made in good faith as it was made after the investigation commenced. The plea was supported by the following pertinent exhibits: (1) Leal's deposition; (2) BISD accounting manual; (3) BISD internal audit reports; (4) Granado's e-mail complaint; (5) BISD police reports; (6) the notice of Leal's termination; and (7) Leal's internal grievance.

Leal filed a response to the plea, claiming that she made a good faith report of Garza's criminal wrongdoing to the appropriate law enforcement authority. Leal supported her response with the following pertinent exhibits: (1) BISD's discovery responses;

5

(2) deposition testimony of various BISD employees, including Officer Gabbert; (3) more internal grievance records; and (4) an order dismissing criminal charges against Leal.

After a hearing, the trial court denied the plea to the jurisdiction. BISD now appeals. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II. STANDARD OF REVIEW

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Subject matter jurisdiction is a question of law; therefore, when the determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.*

A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). "When a defendant challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Id.* (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555); *see Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022) (explaining that a plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both). This is true even when the jurisdictional issue intertwines with the merits of the case. *Swanson*, 590 S.W.3d at 550.

When jurisdictional facts are challenged, our standard of review mirrors that of a summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 805 (Tex.

6

2018). We must take as true all evidence favorable to the nonmovant, indulge every reasonable inference and resolve any doubts in the nonmovant's favor, and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 771; *Miranda*, 133 S.W.3d at 228. If the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted, and a factfinder must resolve the issue. *Miranda*, 133 S.W.3d at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 228.

"A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). Stated otherwise, the evidence must rise to a level that would enable reasonable and fair-minded people to differ in their conclusions. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). However, a factfinder "may not reasonably infer an ultimate fact from meager circumstantial evidence which could give rise to any number of inferences, none more probable than another." *Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 313 (Tex. 2015) (quoting *Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex. 2013)). Furthermore, evidence does not create a fact issue if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. *Parker*, 514 S.W.3d at 220.

### III. APPLICABLE LAW

Governmental immunity deprives a trial court of subject matter jurisdiction over lawsuits against a subdivision of the State, such as a school district, unless immunity is

7

waived by the Legislature. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). The Whistleblower Act (the Act) provides that a governmental entity may not take adverse personnel action against "a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX. GOV'T CODE ANN. §554.002. A public employee who alleges a violation of the Act "may sue the employing state or local governmental entity" as "[s]overeign immunity is waived and abolished to the extent of liability for the relief" allowed under the Act. *Id.* § 554.0035.

To establish a claim under the Act, an employee must show that she (1) reported (2) a violation of law by the employer or another employee (3) to an appropriate law enforcement authority, (4) that the report was made in good faith, and (5) that the adverse action would not have occurred if the employee had not reported the illegal conduct. *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 182 (Tex. 2022). The Act waives immunity only for viable claims. *See id.* Thus "the elements of [a claim under the Act] can be considered as jurisdictional facts, when it is necessary to resolve whether a plaintiff has alleged a violation under the Act." *State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009).

### IV.    DISCUSSION

In its sole issue, BISD argues that Leal's statement to Officer Gabbert (1) did not constitute a protected report under the Act, and (2) was not made in good faith.[3]

---

[3] The parties do not dispute that BISD's internal audit department is not an appropriate law enforcement authority under the Act, and we agree. BISD presented unrebutted evidence that the audit department does not have authority to enforce the laws allegedly violated. *See Canutillo ISD v. Farran*, 409 S.W.3d 653, 655 (Tex. 2013) (per curiam) (holding that complaints to the ISD's internal auditor were not "good-faith complaints of a violation of law to a 'law enforcement authority'" because the internal auditor did not have "authority to enforce the allegedly violated laws outside of the institution itself, against third parties generally").

## A.    Report

BISD argues that Leal's statement to Officer Gabbert was not a protected report under the Act because: (1) it was an attempt "to deflect from her own culpability[;]" and (2) Granado, not Leal, initiated the law enforcement investigation while Leal's statement was made in response to police questioning. We disagree.

The first portion of BISD's argument essentially asks the Court to indulge all inferences and resolve any doubt in its favor, when our standard of review requires the opposite. *See Clark*, 544 S.W.3d at 805. In other words, despite conflicting evidence, BISD asks us to assume that Leal was guilty of theft and that she is pointing the finger at an innocent person to avoid blame. Viewing the record under the proper lens, we note that Leal's voluntarily statement, while admitting to misconduct, identifies separate alleged violations of the law by Garza, Leal's supervisor.[4] *See* TEX. PENAL CODE ANN. § 31.03 (Theft). "[T]o properly 'report' under the Act, a public employee must convey information that exposes or corroborates a violation of law or otherwise provide relevant, additional information that will help identify or investigate illegal conduct." *Pridgen*, 653 S.W.3d at 184. Leal's statement clearly meets these requirements.

Further, the fact that Leal did not initiate the investigation does not disqualify her from making a protected report under the Act. In *Pridgen*, the Texas Supreme Court rejected a similar attempt to narrow what can be considered a protected report. 653 S.W.3d at 182–86. The court began by noting, "there is no question that 'disclosing' new

---

[4] We also note that the criminal charges against Leal relating to the investigation were dismissed due to insufficient evidence.

information regarding illegal conduct may qualify as 'report[ing] a violation of law.'" *Id.* at 185 (quoting *Castaneda v. Tex. Dep't of Agric.*, 831 S.W.2d 501, 503–04 (Tex. App.— Corpus Christi–Edinburg 1992, writ denied), *superseded by statute on other grounds*, TEX. GOV'T CODE ANN. § 554.002, *as recognized in Pridgen*, 653 S.W.3d at 185). But the court declined to restrict the reporting requirement to the disclosure of novel information. *See id.* Rather, it concluded that an employee may make a protected report by providing additional or corroborating information after an initial report of illegal conduct. *Id.* at 186. The court reasoned that protecting only the employee who makes the initial disclosure of illegal conduct would "discincentivize employees from sharing information after an initial report has been made." *Id.* Pursuant to *Pridgen*, Leal's report is not disqualified under the Act merely because it was not the initial report that triggered the investigation. Therefore, we conclude that Leal's statement to Officer Gabbert disclosing Garza's alleged violations of the law is a protected "report" under the Act. *See id.*

**B.    Good Faith**

Relatedly, BISD argues that Leal's report to Officer Gabbert was not a "good faith" report under the Act because it is not objectively reasonable for Leal "to wait until she was being interrogated on suspicion of theft to implicate others to deflect from her own culpability." We disagree.

"[T]he 'good faith' limitation modifies all the Act's components, including the report requirement." *Id.* at 184 n.5 (citing TEX. GOV'T CODE ANN. § 554.002(a)). The good faith requirement has both "subjective and objective components." *Id.* (citing *Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996)). To properly report a "violation of law," an

10

employee must personally believe the conduct reported was a violation of law, and the employee's belief must have been reasonable in light of his training and experience. *Hart*, 917 S.W.2d at 784. "[A]n employee 'reports' 'in good faith' when (1) the employee believes the reported information will facilitate identifying or investigating a violation of law by the employing governmental entity or another public employee, and (2) the employee's belief is reasonable in light of the employee's training and experience." *Pridgen*, 653 S.W.3d at 184 n.5 (citing *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002)).

BISD cites no authority, and we have found none, supporting its position that an employee cannot make a good faith report under the Act if it is made only in response to a police request. We reject this proposition for the same reasons announced in *Pridgen*, in that such a limitation would "discincentivize employees from sharing information after an initial report has been made." *See* 653 S.W.3d at 186. BISD does not otherwise dispute whether Leal's report was made in "good faith" in accordance with the standard articulated by the Texas Supreme Court. *See id.*

## C.     Summary

We conclude that Leal has met her burden to present a fact issue as to the "report" and "good faith" elements of her claim. *See Miranda*, 133 S.W.3d at 227–28. BISD does not challenge the remaining elements of Leal's whistleblower claim. Therefore, the trial court did not err in denying BISD's plea to the jurisdiction. We overrule BISD's sole issue.

## V.     CONCLUSION

We affirm the trial court's judgment.

11

L. ARON PEÑA JR.
Justice

Delivered and filed on the
25th day of May, 2023.